DA 07-0096

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 275

MARY J. MODROO, individually and as Personal
Representative of the Estate of Mamie J. Hardy,
deceased, ESTATE OF MAMIE J. HARDY, and
CASSIUS H. HARDY,

       Plaintiffs and Appellants,

   v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,
NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,
FARMLAND MUTUAL INSURANCE COMPANY, and
MAX LEMAIRE,

       Defendants and Appellees.

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and For the County of Missoula, Cause No. DV 03-620
               Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           James L. Jones, Kyle A. Gray; Holland & Hart LLP; Billings, Montana
           (for Mary J. Modroo & Estate of Mamie J. Hardy)

           David R. Paoli, Heather M. Latino, John A. Kützman; Paoli, Latino
           & Kutzman, P.C.; Missoula, Montana (for Cassius H. Hardy)

      For Appellees:

           Gary L. Graham, David C. Berkoff; Garlington, Lohn & Robinson, PLLP;
           Missoula, Montana (for Nationwide Mutual Fire Insurance Company)

                         Submitted on Briefs:  January 16, 2008

                                Decided:  August 5, 2008

Filed:

               _____

                          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Mary J. Modroo, the Estate of Mamie J. Hardy (collectively, Modroo), and Cassius H. Hardy appeal from the District Court's rulings on several motions for summary judgment and motions to dismiss. We reverse and remand.

¶2 We restate the issues as follows:

¶3 Did the District Court err when it concluded that Mamie was not an "insured" under the Farmowners policy?

¶4 Did the District Court err when it determined that Hardy lacked standing to pursue his negligence claims against Nationwide?

¶5 Did the District Court err when it determined that Modroo was not entitled to medical payments coverage under the Farmowners policy?

¶6 Did the District Court err when it applied Ohio law to deny the stacking of coverages and to allow offsets under the personal auto policy?

¶7 Did the District Court err when it applied the forum non conveniens doctrine to dismiss Modroo's negligence claim in favor of Ohio proceedings?

## BACKGROUND

¶8 On February 15, 2003, Mamie Hardy (Mamie) suffered fatal injuries in a single-vehicle accident in Mineral County, Montana. Max Lemaire was driving the vehicle, and Mamie was a passenger in the vehicle. Mamie died the next day at St. Patrick's Hospital in Missoula. At the time of the accident, Mamie, an Ohio resident, attended the University of Montana.

2

¶9 The District Court appointed Mamie's mother, Mary Modroo, an Ohio resident, as the Personal Representative of Mamie's estate in Missoula. Following the appointment, Modroo received Lemaire's policy limits of $50,000 from Allstate Insurance Company, without releasing Lemaire from liability. Modroo then filed a lawsuit in the District Court against Lemaire and against Modroo's underinsured-motorist (UIM) coverage carriers: Nationwide Mutual Fire Insurance Company, Nationwide Agribusiness Insurance Company, and Farmland Mutual Insurance Company (collectively, Nationwide). Nationwide then filed two declaratory actions against Modroo in the Geauga County Court of Common Pleas in Ohio. The Ohio court stayed those actions pending the disposition of the current Montana litigation.

¶10 Modroo's second amended complaint included a survival action, a wrongful death claim, a negligent infliction of emotional distress claim, a breach of contract claim, a claim for violations of the Unfair Claims Settlement Practices Act, and a negligence claim against Nationwide concerning the production and assembly of its policies and endorsements. Mamie's father, Cassius H. Hardy (Hardy), filed a motion to intervene in the litigation. The District Court granted Hardy's motion, but denied Hardy the right to participate in the wrongful death and survivorship claims.

¶11 Modroo's complaint asserted UIM coverage from Nationwide under two different policies: a commercial package policy (Farmowners policy) and a personal auto policy. Among other items, the Farmowners policy covered farm equipment, personal property,

3

dwellings, and vehicles. The policy's Business Auto Coverage Form Declarations listed the Named Insured as:

CASSIUS H & MARY J HARDY &
HARRY MODROO
DBA MODROO FARM
15571 HEMLOCK RD
CHAGRIN FALLS OH 44022

On the same page as the Named Insured block, the policy contained the language, "FORM OF BUSINESS: PARTNERSHIP." The Farmowners auto policy contained a schedule of "covered autos" and provided those vehicles with liability coverage, medical payments coverage, UIM coverage, uninsured motorist (UM) coverage, and comprehensive and collision physical damage coverage.

¶12 The Farmowners policy's UIM endorsement provided that Nationwide would pay compensatory damages that "the 'insured' is legally entitled to recover . . . from the owner or operator" of an underinsured motor vehicle. The policy provided a limit of $1,000,000 of UIM coverage per accident. An anti-stacking provision limited the UIM coverage to $1,000,000 "[r]egardless of the number of covered 'autos', 'insureds', [or] premiums paid . . . ." The Farmowners UIM endorsement also provided that the UIM limits would be offset by any amounts paid "by or on behalf of anyone who is legally responsible." The Farmowners auto policy contained no choice of law provision.

¶13 The UIM endorsement stated, "**THIS ENDORSEMENT CHANGES THE POLICY.**" The UIM endorsement contained a Named Insured block that identified "CASSIUS H & MARY J HARDY &" as the Named Insured. The UIM endorsement

4

also provided a definition for "insureds" that varied depending on the designation of the Named Insured.

¶14 Modroo also claimed UIM coverage under a personal auto policy issued by Nationwide. The personal auto policy listed Mary Modroo as the Named Insured and provided that Nationwide would pay compensatory damages that "you or a relative are legally entitled to recover from the owner or driver" of an underinsured motor vehicle "under the tort law of the state where the motor vehicle accident occurred . . . ." The personal auto policy limited the amounts recoverable under UIM coverage to $300,000 per person, and the policy stated that the "per person policy limit shall be enforceable regardless of the number of . . . vehicles or premiums shown in the Declarations or policy . . . ." At the time of the accident, Modroo insured two vehicles under the personal auto policy. The personal auto policy also provided that any amounts available under UIM coverage would be offset by any amounts "available for payment by or on behalf of any liable parties . . . ." The personal auto policy stated that Ohio's contract law governed the insurance contract's interpretation.

¶15 In a series of rulings on partial summary judgment motions, the District Court concluded that Modroo was entitled to UIM coverage under the personal auto policy; however, after conducting a conflicts-of-law analysis, the District Court applied Ohio law and determined that the personal auto policy allowed offsets and precluded the stacking of UIM coverage.

¶16 The District Court granted partial summary judgment to Nationwide and ruled that no UIM coverage was available to Modroo under the Farmowners policy. The court determined that the Farmowners policy designated the Named Insured as a partnership, and thus, no coverage extended to Mamie under the Farmowners policy. The District Court reasoned that no coverage existed because Mamie was injured in Lemaire's vehicle, which was not a covered auto under the Farmowners policy. The District Court conducted no conflicts-of-law analysis of the Farmowners policy, except to note that the policy contained no choice-of-law provisions. The District Court determined that the Farmowners policy contained no ambiguity regarding whom the policy insured or what constituted a covered auto. In light of its determination that coverage was clearly excluded under the Farmowners policy, the District Court dismissed Modroo's and Hardy's claims for bad faith and breach of contract.

¶17 The District Court also granted Nationwide's summary judgment motion on Hardy's negligence claims. The court concluded that Hardy lacked standing to pursue a negligence claim because Hardy possessed no ownership interest in Modroo Farm and possessed no insurable interest in Mamie's life. The District Court also denied Modroo's summary judgment motion for medical payments coverage under the Farmowners policy based on its conclusion that the partnership constituted the only Named Insured.

¶18 After the District Court's several rulings, Modroo's only remaining claims against Nationwide consisted of the bad-faith claim relating to the personal auto policy and the negligence claim relating to the production and assembly of Nationwide's policies and

6

endorsements. The District Court bifurcated Modroo's claims against Lemaire and, under the doctrine of forum non conveniens, dismissed Modroo's negligence claim against Nationwide in favor of the stayed proceedings in Ohio. To obtain a final judgment, Modroo moved to dismiss the unfair claims settlement practices claim relating to Nationwide's initial denial of coverage under the personal auto policy. Modroo and Hardy now appeal from the District Court's rulings.

## STANDARD OF REVIEW

¶19 We review de novo a district court's grant or denial of summary judgment, applying the same criteria as the district courts. *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 9, 293 Mont. 140, ¶ 9, 974 P.2d 623, ¶ 9. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file," together with any affidavits demonstrate that no genuine issue exists as to any material fact and that the party moving for summary judgment is entitled to judgment as a matter of law. M. R. Civ. P. 56(c). We view the evidence in the light most favorable to the party opposing summary judgment, and we draw all reasonable inferences in favor of the party opposing summary judgment. *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 22, 297 Mont. 336, ¶ 22, 993 P.2d 11, ¶ 22.

## DISCUSSION

¶20 **I** **Did the District Court err when it concluded that Mamie was not an "insured" under the Farmowners policy?**

¶21    In its initial ruling, the District Court determined that Mamie was not an "insured" under the Farmowners policy because the partnership, Modroo Farm, constituted the Named Insured. The District Court concluded that, because the Named Insured was designated as a partnership, the Farmowners policy limited "insureds" to individuals who occupied a covered auto. The District Court based many of its subsequent rulings on this determination.

¶22    Modroo challenges the District Court's conclusion and asserts that Mary Modroo and Hardy are individual Named Insureds under the plain language of the UIM endorsement. Modroo alternatively argues that the District Court erred when it ignored numerous ambiguities within the Farmowners policy. Modroo maintains that the ambiguities require that the policy be construed against Nationwide and in favor of Modroo and Hardy. Modroo and Hardy contend that if Mary Modroo and Hardy are individually Named Insureds, then Mamie also is an insured as a "family member." Nationwide responds that the District Court correctly determined that no ambiguity existed regarding the identity of the Named Insured as the partnership and that it correctly ruled that Mamie was not insured under the policy.

¶23    The District Court conducted no conflict-of-law analysis when it interpreted the Farmowners policy. Our review of Ohio law regarding contract interpretation reveals no conflict with Montana law, and thus, we apply contract interpretation principles under Montana law. The interpretation of an insurance contract presents a question of law. *Wendell*, ¶ 10. We examine insurance contracts as a whole, with no special deference to

specific clauses. *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, ¶ 26, 315 Mont. 281, ¶ 26, 68 P.3d 703, ¶ 26. We accord the usual meaning to the terms and the words in an insurance contract, and we construe them using common sense. *Mitchell*, ¶ 26. An insurance contract is ambiguous if it is "reasonably subject to two different interpretations." *Mitchell*, ¶ 26. We determine whether an ambiguity exists from the viewpoint of a consumer with average intelligence, but untrained in the law or the insurance business. *Mitchell*, ¶ 26. We construe ambiguities in an insurance contract against the insurer and in favor of extending coverage. *Mitchell*, ¶ 26.

¶24 The first page of the UIM endorsement states, "**THIS ENDORSEMENT CHANGES THE POLICY.**" The endorsement provides that, with respect to UIM coverage, the Coverage Form provisions apply "unless modified" by the UIM endorsement. Like the Business Auto Coverage Form Declarations, the UIM endorsement contains a block entitled "Named Insured." The UIM endorsement lists the Named Insured as "CASSIUS H & MARY J HARDY &[.]" The UIM endorsement further states that "[i]f no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement."

¶25 The second page of the UIM endorsement provides a definition for "insureds" that varies depending on the designation of the Named Insured. If the Declarations designate the Named Insured as an individual, then "insured" includes the Named Insured and the Named Insured's family members. If the Named Insured is designated as a partnership, then "insured" includes only those occupying a covered auto. No UIM coverage extends

9

to anyone occupying an auto that is not a covered auto if the Named Insured is designated as a partnership. UIM coverage, however, does not hinge on whether a Named Insured and the Named Insured's "family members" are occupying a covered auto if the Named Insured is designated as an individual.

¶26 Modroo asserts that no reason exists to look to the Declarations to determine how the Named Insured is designated because the UIM endorsement's Named Insured block contains an entry: "CASSIUS H & MARY J HARDY &[.]" According to Modroo, a reasonable interpretation is that the UIM Named Insureds are Hardy, Mary Modroo, "'&' someone or something else." Looking to prior UIM endorsements, Modroo suggests the "someone else" is Harry Modroo, Mary Modroo's uncle and a partner in Modroo Farm. Prior UIM endorsements listed "CASSIUS H & MARY J HARDY & HARRY MODROO" as Named Insureds. Modroo points out that the UIM endorsement's Named Insured block never included the partnership. Modroo further asserts that the Named Insured block contained in the Business Auto Coverage Form Declarations is ambiguous and that a form of business description does not constitute a designation of a Named Insured.

¶27 Nationwide responds that the language in the UIM endorsement's Named Insured block is irrelevant because the endorsement's "Who is an Insured" section unequivocally directs a reader to the "Declarations" to determine whether the Named Insured is designated as an individual or as a business entity. According to Nationwide, the Declarations identify the Named Insured as a partnership. Thus, Nationwide asserts that

10

the "Who is an Insured" section excludes UIM coverage for persons not occupying a "covered auto" at the time they are injured. According to Nationwide, no UIM coverage is available because Mamie did not suffer her injuries in a "covered auto." Nationwide asserts that the Business Auto Coverage Form Declarations listing the Named Insured as "CASSIUS H & MARY J HARDY & HARRY MODROO DBA MODROO FARM" and the designation "FORM OF BUSINESS: PARTNERSHIP" refute Modroo's claims of ambiguity.

¶28 Nationwide presents a reasonable interpretation of the policy; Nationwide's interpretation, however, is not the only reasonable interpretation. Modroo's contention that the UIM coverage applied to Mary Modroo and Hardy as individuals finds support from the disparity between the UIM Named Insured block and the Business Auto Coverage Form block, in addition to the customary listing of only three individuals in the UIM endorsement's Named Insured block.

¶29 Further, even if we accepted Nationwide's argument that the UIM endorsement's Named Insured block is irrelevant and looked only to the Business Auto Coverage Form Declarations to ascertain the Named Insured's designation, a reasonable interpretation still grants Mary Modroo and Hardy coverage as individuals. The UIM endorsement directs one to the Declarations to determine the manner in which the Named Insured is designated. Common sense dictates that any such designation would be included in the Named Insured block, not, as Nationwide contends, in a form-of-business section. The Named Insured block does not designate the Named Insured as a partnership. The

11

Named Insured block does, however, include the names of three individuals – Hardy, Mary Modroo, and Harry Modroo – who are doing business together as Modroo Farm. A reasonable reading of the Named Insured block is that the Named Insureds include Hardy, Mary Modroo, and Harry Modroo, as individuals, and Modroo Farm, as some form of entity.

¶30    Nationwide argues that, even if the Farmowners policy granted UIM coverage to the individual partners, the policy did not "designate" the partners as "individuals," and thus, Mamie still would not be entitled to coverage as a "family member." According to Nationwide, the FORM OF BUSINESS section would have designated "Individuals" if the Named Insured was intended to be an individual.

¶31    Nationwide burdens the words "designate" and "individuals" with more weight than they were intended to carry. The Farmowners policy provides no definition for either the word "designate" or the word "individual"; thus, we accord them their usual meaning, and we construe them using common sense. *Mitchell*, ¶ 26. The usual meaning of the verb "designate" means "1. To indicate or specify; point out. 2. To give a name or title to; characterize. 3. To select and set aside for a duty, an office, or a purpose." *American Heritage Dictionary of the English Language* 492 (4th ed. Houghton Mifflin Co. 2000). The usual meaning of "individual" is "[a] single human considered apart from a society or community . . . . A person." *American Heritage Dictionary of the English Language* at 893. If Nationwide intended to insure only Modroo Farm, it could have listed the Named Insured as simply, "Modroo Farm" or "Modroo Farm, a partnership

12

entity only." No reason existed for Nationwide to include the individuals Hardy, Mary Modroo, and Harry Modroo in the Named Insured block unless Nationwide intended the UIM coverage to apply to them as individuals. By specifically naming the individual partners as separate persons in the Named Insured block, a reasonable interpretation of the policy is that Nationwide designated Mary Modroo and Hardy as individuals for the purposes of defining coverage.

¶32 Viewing the Farmowners policy from the perspective of a consumer of average intelligence, but untrained in the law or the insurance business, we conclude that the policy is subject to more than one reasonable interpretation and is ambiguous. *Mitchell*, ¶ 26. We construe ambiguities in an insurance contract against the insurer and in favor of extending coverage. *Mitchell*, ¶ 26. Thus, we construe the Farmowners policy as designating Mary Modroo and Hardy as individual Named Insureds, and we conclude that the Farmowners UIM coverage extends to Mamie as Hardy's and Mary Modroo's "family member."

¶33 **II      Did the District Court err when it determined that Hardy lacked standing to pursue his negligence claims against Nationwide?**

¶34 Hardy asserts that the District Court erred when it determined that Hardy possessed no insurable interest in Mamie's life and thus lacked standing to pursue negligence claims against Nationwide. The District Court ruled that Hardy lacked standing based on Hardy's admission that he had relinquished his interest in Modroo Farm prior to Mamie's accident and Hardy's inability to demonstrate an insurable interest

13

in Mamie's life. Also underlying the District Court's ruling was its determination that Hardy was not a Named Insured under the Farmowners policy. Our conclusion under Issue I, that Hardy was an individual Named Insured, makes resolution of this issue unnecessary.

¶35 **III    Did the District Court err when it determined that Modroo was not entitled to medical payments coverage under the Farmowners policy?**

¶36 Modroo argues that the District Court ignored ambiguities in the Farmowners policy's medical payments endorsement and erroneously denied Modroo medical payment benefits.

¶37 The interpretation of an insurance contract presents a question of law, which we review for correctness. *Wendell*, ¶ 10. The medical payments endorsement defines "Insured" as "1. You while 'occupying' or while a pedestrian, when struck by any 'auto.' 2. If you are an individual, any 'family member' . . . . 3. Anyone else 'occupying' a covered 'auto' . . . ." The policy states that "you" refers to the Named Insured. The District Court concluded that Mamie was not entitled to individual medical payment coverage because "no ambiguity arises from the use of the term 'you' in the Auto Medical Payments Coverage Endorsement, as the policy clearly identifies the named insured as a partnership." Based on our conclusion under Issue I, that the Named Insured included the individual partners and designated them as individuals, we conclude that the District Court erred when it determined that Modroo was not entitled to medical payment benefits.

14

¶38 **IV    Did the District Court err when it applied Ohio law to deny the stacking of coverages and to allow offsets under the personal auto policy?**

¶39    The District Court conducted a conflicts-of-law analysis and determined that Ohio law governed Modroo's entitlement to damages under the personal auto policy's UIM coverage.  Modroo has not appealed the District Court's determination that Ohio law constitutes the applicable law, but argues that the District Court misapplied Ohio law.  According to Modroo, when a choice-of-law provision is ambiguous, Ohio law directs courts to apply the laws of the state that most favors the insured.  Modroo argues that the personal auto policy contains several choice-of-law provisions and that most of the provisions invoke the laws of the place of the accident.  Modroo claims that these multiple provisions result in a choice-of-law ambiguity; accordingly, Modroo asserts that under Ohio law, the District Court should have applied Montana law and allowed stacking and prohibited offsets.  Alternatively, Modroo argues that the District Court erred in enforcing language from the personal auto policy that contravenes Montana's public policy regarding offsets and stacking.

*A.    Did the District Court misapply Ohio law to allow offsets and preclude stacking?*

¶40    Ohio and Montana share similar principles of contract interpretation.  The interpretation of an unambiguous insurance contract presents a question of law.  *Nationwide Mut. Fire Ins. v. Guman Bros. Farm*, 652 N.E.2d 684, 686 (Ohio 1995).  Provisions in an insurance contract that are "reasonably susceptible of more than one

15

interpretation" are "construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988).

¶41     The personal auto policy listed Mary Modroo as the Named Insured and provided that Nationwide would pay compensatory damages that "you or a relative are legally entitled to recover from the owner or driver" of an underinsured motor vehicle "under the tort law of the state where the motor vehicle accident occurred . . . ." The personal auto policy also provides that the "contract law of the State of Ohio governs the interpretation of this contract." Modroo asserts that Ohio law holds that policies containing ambiguous choice-of-law language "*i.e.*, some language saying Ohio law applies, some suggesting otherwise . . . must be construed to apply whatever law is most favorable to the insured." Modroo relies on *Csulik v. Nationwide Mut. Ins. Co.*, 723 N.E.2d 90 (Ohio 2000) (plurality) to support its proposition.

¶42     In *Csulik*, the Ohio Supreme Court held that language requiring Nationwide to pay compensatory damages, "which are *due by law* to you or a relative from the owner or driver of an uninsured motor vehicle" was ambiguous because the phrase "due by law" was subject to more than one interpretation. *Csulik*, 723 N.E.2d at 91-92 (plurality). The insureds argued that Pennsylvania law, the law of the state where the accident occurred, should govern UIM recovery; Nationwide argued that the law of Ohio applied. *Csulik*, 723 N.E.2d at 91 (plurality).

¶43     The court determined that the "due by law" language was ambiguous because it was unclear "whether Nationwide must pay what is due by the law of the state where the

16

accident occurred or due by Ohio law." *Csulik*, 723 N.E.2d at 91 (plurality). Csulik's policy required an insured to sue for UIM coverage within the time limits provided by the state in which the accident occurred, and the court reasoned that this language could lead one to "logically conclude" that the laws of the accident state also determined the rights of the insured under the policy. *Csulik*, 723 N.E.2d at 92 (plurality). Based on its practice of strictly construing ambiguities "against the insurer and liberally in favor of the insured[,]" the court declined to conduct a choice-of-law analysis and held that Pennsylvania law, which more favored the insured, applied to the insurance contract. *Csulik*, 723 N.E.2d at 92-93 (plurality).

¶44 Modroo asserts that the personal auto policy's multiple choice-of-law provisions result in an ambiguity. Under *Csulik*, Modroo argues that Montana law should apply to determine Modroo's rights because Montana law prohibits offsets and allows stacking of coverage; thus, Montana law favors Modroo. We disagree.

¶45 The personal auto policy provides that Nationwide will pay compensatory damages that "you or a relative are legally entitled to recover from the owner or driver" of an underinsured motor vehicle "under the tort law of the state where the motor vehicle accident occurred . . . ." This policy language unambiguously invokes Montana tort law. The personal auto policy also provides that the "contract law of the State of Ohio governs the interpretation of this contract." This policy language unambiguously designates that Ohio law governs the interpretation of the insurance contract. The presence of two choice-of-law provisions, however, does not necessarily create an ambiguity. Contrary to

17

Modroo's assertion, *Csulik* does not hold that a policy is ambiguous because different state's laws apply to different provisions. In fact, the Ohio Supreme Court specifically discussed Nationwide's ability to designate different state's laws to the policy provisions, and the court implied that Nationwide could have "clarified the 'due by law' language" by following this practice. *Csulik*, 723 N.E.2d at 92 (plurality). In short, the provisions in the personal auto policy are not ambiguous because they are not "susceptible of more than one interpretation . . . ." *King*, 519 N.E.2d at 1383. Thus, under the personal auto policy, Montana tort law determines Modroo's entitlement to compensatory damages, and Ohio contract law governs the interpretation of the insurance contract.

¶46 The personal auto policy limits the amounts recoverable under UIM coverage to $300,000 per person, and the policy contains anti-stacking language, which states that the "per person policy limit shall be enforceable regardless of the number of . . . vehicles or premiums shown in the Declarations or policy . . . ." At the time of the accident, Modroo insured two vehicles under the personal auto policy with Nationwide. The personal auto policy also provides that any amounts available under UIM coverage will be offset by any amounts "available for payment by or on behalf of any liable parties . . . ."

¶47 The issue presented by Modroo does not concern the amount of damages from Mamie's accident; rather, it concerns the amount of coverage that Nationwide must provide under the personal auto policy. The amount of coverage available under a UIM provision is defined under principles of contract law, not tort law. *State Farm v. Estate of Braun*, 243 Mont. 125, 128, 793 P.2d 253, 255 (1990). Whether Modroo may recover

18

under multiple UIM coverages thus presents a question of contract law, and Ohio law applies to determine the amount of coverage that Modroo may recover under the personal auto policy. Ohio law allows an insurance contract to "include terms and conditions that preclude any and all stacking" of UIM coverages. Ohio Rev. Code Ann. § 3937.18(F). Ohio law also states that UIM policy limits "shall be reduced by those amounts available for payment under . . . insurance policies covering persons liable to the insured." Ohio Rev. Code Ann. § 3937.18(C). Based on these statutory provisions, we conclude that the District Court did not misapply Ohio law when it denied the stacking of coverages and allowed offsets under the personal auto policy.

**B.** *Did the District Court err in allowing offsets and precluding stacking under the personal auto policy, in violation of Montana public policy?*

¶48 Modroo asserts that Montana courts refuse to enforce an insurance policy's language that violates Montana public policy, regardless of the state in which the policy was issued. Modroo maintains that the personal auto policy violates Montana public policy because it allows offsets and precludes stacking of coverages.

¶49 In *Youngblood v. American States Ins. Co.*, we held that we will enforce an unambiguous contract term unless the term violates Montana public policy or is against good morals. 262 Mont. 391, 395, 866 P.2d 203, 205 (1993). In *Youngblood*, we refused to enforce an insurance contract's clear choice-of-law provision that allowed subrogation of medical payments under Oregon law. 262 Mont. at 400, 866 P.2d at 208. We held that subrogating medical payment benefits in Montana is void as against public policy,

19

and we concluded that, "[b]ecause such subrogation violates Montana's public policy, that term of the insurance contract" is unenforceable. *Youngblood*, 262 Mont. at 400, 866 P.2d at 208.

¶50    In *Casarotto v. Lombardi*, we recognized that, when faced with a choice-of-law conflict in contract disputes, we follow the "most significant relationship" approach contained in the *Restatement (Second) of Conflict of Laws* to determine the applicable state law.  268 Mont. 369, 373-74, 886 P.2d 931, 934 (1994), *rev'd on other grounds*, *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652 (1996).  In *Casarotto*, we expanded on the *Youngblood* rule, and we applied the *Restatement (Second) of Conflict of Laws* § 187 and § 188 (1971) to determine the effectiveness of a choice-of-law provision that potentially violated Montana public policy.  268 Mont. at 374-75, 886 P.2d at 934-35.  We again applied the *Restatement* to determine the validity of a choice-of-law provision that potentially violated Montana policy in *Keystone, Inc. v. Triad Systems Corp.*, 1998 MT 326, ¶¶ 10-14, 292 Mont. 229, ¶¶ 10-14, 971 P.2d 1240, ¶¶ 10-14.

¶51    In *Swanson v. Hartford Ins. Co. of Midwest*, we refused to enforce an insurance policy's choice-of-law provision that designated Colorado law as governing the insurer's rights to subrogation.  2002 MT 81, ¶ 33, 309 Mont. 269, ¶ 33, 46 P.3d 584, ¶ 33.  We determined that application of Colorado law would allow the insurer to subrogate before the insured had been "made whole."  We concluded that the provision violated Montana's "made whole" doctrine, and thus, was void as against Montana public policy.  *Swanson*, ¶

20

32. For reasons unstated in the opinion, we applied the original *Youngblood* rule without addressing the *Restatement* factors. Though *Youngblood* and *Swanson* both addressed subrogation provisions, and *Casarotto* and *Keystone, Inc.* both addressed arbitration provisions, we did not limit the respective holdings to those particular types of provisions.

¶52 In this case, the District Court applied the *Restatement (Second) of Conflict of Laws* and conducted a conflicts-of-law analysis to the personal auto policy. The District Court determined that Montana did not have a materially greater interest in the case and that Ohio law governed Modroo's entitlement to UIM coverage. The District Court's approach approximated that set forth in *Casarotto* and *Keystone, Inc.* As discussed in ¶ 39, Modroo has not appealed the District Court's determination that Ohio law applied to the personal auto policy. Relying on *Swanson*, however, Modroo contends that the personal auto policy's language violates Montana public policy, and thus is unenforceable.

¶53 Montana does not recognize a public-policy exception to the "most significant relationship" analysis because the purpose of the analysis is to resolve conflicts between different states' competing policies; thus, such an exception would be "redundant." *Phillips v. General Motors Corp.*, 2000 MT 55, ¶ 75, 298 Mont. 438, ¶ 75, 995 P.2d 1002, ¶ 75. Nevertheless, though Modroo's argument more appropriately would be raised as a challenge to the District Court's choice-of-law determination, we can see how our analysis in *Swanson* could create confusion regarding the analysis we apply to

21

determine whether Montana public policy will invalidate a choice-of-law provision. Thus, we will review whether application of the personal auto policy's choice-of-law provision is effective under Montana law. We reiterate that the *Restatement (Second) of Conflict of Laws* governs whether to give effect to parties' contractual choice-of-law provisions. *Keystone, Inc.*, ¶ 10.

¶54 Under the *Restatement*, we will apply the "law of the state chosen by the parties to govern their contractual rights" unless

> application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Restatement (Second) of Conflict of Laws* § 187(2)(b). Stated differently, we will not apply the law of the state chosen by the parties if three factors are met: (1) if, but for the choice-of-law provision, Montana law would apply under § 188 of the *Restatement*; (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties; and (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana.

¶55 Section 188 of the *Restatement* governs situations in which the contracting parties fail to select an effective choice of law:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6 [Choice-of-Law Principles].

22

Section 6(1) of the *Restatement* provides that a court, "subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Montana law provides that a "contract is to be interpreted according to the law and usage of the place where it is to be performed . . . ." Section 28-3-102, MCA.

¶56    In *Mitchell v. State Farm Ins. Co.*, we considered a case similar to Modroo's. In that case, Mitchell was insured under his parents' California insurance policies and suffered injuries in Montana while a passenger in a vehicle. Mitchell sued his parents' insurance company and claimed that he was entitled to UIM coverage for five vehicles that his parents owned and insured in California. The District Court determined that California law, rather than Montana law, applied and that Mitchell was not entitled to UIM coverage. *Mitchell*, ¶ 11. In reversing the District Court, we determined that Montana was an anticipated place of performance because the policy provided that "coverages you choose apply (1) in the United States of America . . . ." *Mitchell*, ¶ 19. We further reasoned that a contract's place of performance is the place "where an insured is entitled to receive benefits, has incurred accident related expenses, or is entitled to judgment." *Mitchell*, ¶ 20. We ultimately concluded that Montana was the place of performance, and thus, under § 28-3-102, MCA, Montana law applied to determine whether Mitchell was entitled to stack UIM coverage. *Mitchell*, ¶ 23. We determined that Montana was the place of performance because

> Mitchell was working and living in Montana at the time of the accident; the underinsured tort-feasor's vehicle was insured in Montana; Mitchell's medical expenses were incurred in Montana; Mitchell settled with the [car-owner's] insurers for the policy limit giving rise to the underinsured

23

motorist claim in Montana; and judgment concerning the accident will be rendered and paid in Montana.

*Mitchell*, ¶ 22.

¶57 In this case, Modroo's policy provided that Nationwide would pay damages that "you or a relative are legally entitled to recover from the owner or driver of an uninsured motor vehicle under the tort law of the state where the motor vehicle accident occurred . . . ." Based on our reasoning in *Mitchell*, we conclude that Montana constitutes an anticipated place of performance. Moreover, at the time of the accident, Mamie attended the University of Montana in Missoula; she lived and worked in Montana; she paid taxes in Montana; Mamie's medical expenses were incurred in Montana; Modroo settled with Lemaire's insurer for the policy limit, which gave rise to the underinsured motorist claim in Montana; and any judgment concerning the underlying accident will be rendered and paid in Montana. *Mitchell*, ¶ 22. We conclude that, under *Mitchell* and § 28-3-102, MCA, Montana constitutes the place of performance for the personal auto policy. Thus, setting aside the parties' contractual choice-of-law provision, Montana law would apply under § 188 of the *Restatement*.

¶58 Under Montana law, the law of the place of performance governs a contract's interpretation unless the terms of the insurance contract provide otherwise. *Mitchell*, ¶ 20. When insurance policies contain no choice-of-law provisions, we need not consider whether Montana possesses a materially greater interest in the contract issue than another state. *Restatement (Second) of Conflict of Laws* § 188. In *Mitchell*, the insurance policies did not include a choice-of-law provision. Thus, once we determined that Montana

24

constituted the place of performance, we next considered whether Mitchell was entitled to recover UIM damages under Montana law, without analyzing whether Montana had a materially greater interest than California. *Mitchell*, ¶¶ 22-24; *accord Wamsley v. Nodak Mut. Ins. Co.*, 2008 MT 56, ¶¶ 42-44, 341 Mont. 467, ¶¶ 42-44, 178 P.3d 102, ¶¶ 42-44. In this case, however, in light of the parties' choice-of-law provision specifying that Ohio law governs the interpretation of the personal auto policy, we must determine whether Montana has a materially greater interest in the issue than Ohio. If we determine that Montana has a materially greater interest, we then analyze whether applying Ohio law would violate Montana public policy. *Restatement (Second) of Conflict of Laws* §§ 187-188.

¶59  To determine whether Montana has a materially greater interest in an issue than the parties' chosen state, we have focused on the contacts enumerated in § 188(2) of the *Restatement*: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Keystone, Inc.*, ¶ 10. We evaluate these contacts according to the relative importance they bear on the particular issue. *Restatement (Second) of Conflict of Laws* § 188(2).

¶60  Modroo purchased her personal auto policy in Ohio from the Skala Insurance Agency, which sold Nationwide insurance. Ohio thus constitutes the place of contracting. Further, Modroo is an Ohio resident and Nationwide is headquartered in

25

Ohio. The comments to the *Restatement* clarify that these contacts bear little significance when considered separately, but gain importance based on their relationship to the contract issue involved and the other contacts. *Restatement (Second) of Conflict of Laws* § 188 cmt. e. The location of the subject matter bears no significance to the present case because the subject matter of the insurance contract does not constitute a specific physical thing or a localized risk. *Restatement (Second) of Conflict of Laws* § 188 cmt. e.

¶61    The comments to the *Restatement* indicate that the place of the contract's negotiation and the place of performance bear greater significance to determine the applicable law. *Restatement (Second) of Conflict of Laws* § 188 cmt. e. The *Restatement* accords weight to the place of negotiation because such a state "has an obvious interest in the conduct of the negotiations" and the subsequent agreement. *Restatement (Second) of Conflict of Laws* § 188 cmt. e. If any negotiations occurred regarding Modroo's personal auto policy, they would have taken place in Ohio. Unlike most contracts, however, an insurance policy's terms are not the result of negotiation and bargaining by the parties; insurance policies occupy the same status as "take-it-or-leave-it" adhesion contracts. *McAlear v. Saint Paul Insurance Companies*, 158 Mont. 452, 458-59, 493 P.2d 331, 335 (1972). Thus, due to the parties' unequal bargaining status, we accord this contact little weight.

¶62    As discussed in ¶ 57, Montana constitutes the place of performance for Modroo's personal auto policy. The *Restatement* accords weight to the place of performance because such a state "has an obvious interest in the nature of the performance and in the

26

party who is to perform." *Restatement (Second) of Conflict of Laws* § 188 cmt. e. The comments offer the caveat, however, that the place of performance bears little weight in choice-of-law determinations when the place of performance is uncertain or unknown at the time of contracting. *Restatement (Second) of Conflict of Laws* § 188 cmt. e. In the present case, Montana constituted an anticipated place of performance because Nationwide agreed to pay UIM damages "under the tort law of the state where the motor vehicle accident occurred . . . ." Montana did not become the place of performance, however, until Mamie's accident occurred and the underlying claims arose. Thus, we accord this contact little weight because Montana's status as the place of performance was uncertain or unknown at the time of contracting. *Restatement (Second) of Conflict of Laws* § 188 cmt. e.

¶63 Analyzing the contacts from the *Restatement (Second) of Conflict of Laws* § 188, we conclude that, although Montana has an interest in the particular issue based on its status as the place of performance, Montana does not possess a materially greater interest that would warrant applying Montana law over the parties' express choice-of-law provision selecting Ohio as the governing law for contract interpretation. In light of this conclusion, we do not reach the question whether applying Ohio law would contravene a fundamental public policy of Montana.

¶64 The dissent cautions that we "should be wary of a reflexive and rote application" of the § 188(2) factors when analyzing the "materially greater interest" factor, and the dissent suggests that we should abandon the *Restatement* analysis set forth in *Casarotto*

27

and *Keystone, Inc.* The dissent cites to a Ninth Circuit opinion for the proposition that Montana courts conflate the *Restatement* analysis so that "whichever state has a materially greater interest under § 188 is also the state whose law would apply absent an effective choice of law provision." *Ticknor v. Choice Hotels Intl., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). Though both *Keystone, Inc.* and *Casarotto* lacked analysis regarding which state's law would apply absent the parties' express choice, neither case set forth the rule applied by the Ninth Circuit. On the contrary, both *Keystone, Inc.* and *Casarotto* expressed the three-factor inquiry from the *Restatement (Second) of Conflict of Laws* § 187(2)(b) as the rule Montana courts apply to determine whether the parties' chosen state's law will apply. *Keystone, Inc.*, ¶ 10; *Casarotto*, 268 Mont. at 374-75, 886 P.2d at 934-35. As this case illustrates, we do not conflate the *Restatement* factors as suggested in *Ticknor*.

¶65 After pointing out Montana's apparent "anomaly" of conflating the *Restatement* factors, the dissent then provides its own *Restatement* analysis and conflates the "materially greater interest" factor with the "violates fundamental public policy" factor, concluding that "Montana's interest is materially greater than Ohio's, *because* anti-stacking provisions are against public policy here as a matter of constitutional principle." (Emphasis added.) The District Court applied § 188(2) of the *Restatement* and *Keystone, Inc.* to determine that Montana did not have a materially greater interest. Neither party has proposed that we overrule our precedent. With no briefing on this issue, we decline

28

to use this case to announce a change in our conflicts-of-law principles and to overrule *Keystone, Inc.* and *Casarotto*.

¶66 Moreover, the dissent's assumption that applying Ohio law would violate Montana public policy is questionable. Anti-stacking provisions violate Montana public policy if they allow an insurer to charge separate premiums for multiple UIM coverages but limit the amount an insured may recover to the limits available under a single UIM coverage. *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶¶ 40-42, 315 Mont. 107, ¶¶ 40-42, 67 P.3d 892, ¶¶ 40-42. Such provisions violate Montana public policy because they contravene the insured's reasonable expectation that he or she has purchased UIM coverage. *Hardy*, ¶ 45. Consistent with this underlying principle, the number of premiums paid determines the number of coverages an insured is entitled to stack. *Chaffee v. U.S. Fid. and Guar. Co.*, 181 Mont. 1, 7, 591 P.2d 1102, 1105 (1979) (citation omitted). In this case, Modroo's personal auto policy lists two vehicles in the declarations. The declarations indicate that, although Nationwide charged separate premiums for each vehicle's liability coverage, Nationwide charged only a single premium for UM/UIM coverage. Modroo received UIM benefits for a single vehicle. Thus, it is unlikely that the personal auto policy's language defeated Modroo's reasonable expectations and thereby violated Montana public policy.

¶67 **V    Did the District Court err when it applied the forum non conveniens doctrine to dismiss Modroo's negligence claim in favor of Ohio proceedings?**

29

¶68 Modroo and Hardy assert that the District Court erroneously applied the forum non conveniens doctrine to dismiss Modroo's negligence claim. Modroo and Hardy argue that this Court repeatedly has declined to adopt the doctrine and that the doctrine is inapplicable to the present case.

¶69 Nationwide responds that the District Court properly dismissed the negligence claim under the forum non conveniens doctrine because the insurance contract is an Ohio contract, the agents who sold the policy reside in Ohio, and most of the allegedly negligent acts occurred in Ohio. Further, Nationwide asserts that, with the exception of FELA cases, the forum non conveniens doctrine has never been rejected in Montana and the doctrine properly was applied in this case.

¶70 We have stated that § 25-2-201, MCA, codifies the doctrine of forum non conveniens to allow a court to change venue from one Montana county to another Montana county. *Rule v. Burlington Northern and Santa Fe*, 2005 MT 6, ¶ 19, 325 Mont. 329, ¶ 19, 106 P.3d 533, ¶ 19; *Haug v. Burlington Northern R. Co.*, 236 Mont. 368, 374-75, 770 P.2d 517, 521 (1989). We have not, however, construed § 25-2-201, MCA, to authorize a district court to dismiss a case because it can be tried more conveniently in another state. *State v. Dist. of Eighth Jud. Dist. Ct.*, 270 Mont. 146, 154, 891 P.2d 493, 499 (1995). This case does not require that we resolve the extent of the forum non conveniens doctrine in Montana. In light of our conclusions under Issues I and III, we must reverse and remand this case to the District Court. Thus, a primary rationale underlying the District Court's application of the forum non conveniens

30

doctrine no longer exists: the negligence claim no longer constitutes "the only remaining claim." As the District Court continues to provide a convenient forum for the claims presented in this case, we reverse the District Court's ruling that dismissed Modroo's claims in favor of the Ohio proceedings.

**CONCLUSION**

¶71 We conclude that the District Court erred when it determined that the Farmowners policy designated the Named Insured as a partnership. Construing ambiguities against Nationwide, we conclude that the policy designates Mary Modroo and Hardy as individuals and that Mamie Hardy qualifies as an "insured" based on her relationship as a "family member" of Mary Modroo and Hardy. The District Court's opposite conclusion formed the basis for its rulings denying coverage under the UIM endorsement and the medical payments endorsement. Thus, we reverse the District Court's September 13, 2004 order granting summary judgment to Nationwide and denying summary judgment to Modroo and Hardy regarding coverage under the Farmowners policy, and we reverse the District Court's April 4, 2006 order denying summary judgment to Modroo on medical payments coverage. We further conclude that the District Court continues to provide a convenient forum for the claims presented in this case, and we reverse the District Court's ruling dismissing Modroo's claims under the forum non conveniens doctrine.

¶72 We conclude that the District Court properly applied Ohio law to the personal auto policy to allow offsets and preclude stacking. Based on our analysis of the *Restatement*

31

*(Second) of Conflict of Laws* §§ 187 and 188, we conclude that Montana does not possess a materially greater interest that would warrant applying Montana law over the parties' express choice of law. Thus, we do not reach whether enforcement of the personal auto policy's provisions would violate Montana public policy.

¶73   We reverse and remand for further proceedings.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice Patricia O. Cotter dissents.

¶74   I respectfully dissent from the Court's holding under Issue 4B. I can accept the Court's decision to apply the conflict of laws analysis from § 187(2)(b) of the *Restatement* to determine if Montana law should apply to the insurance policy in this case. (Opinion, ¶ 54.) However, I disagree with the conclusion that Montana's interest in the dispute before use is not "materially greater" than Ohio's.

¶75   The Court correctly notes that the Nationwide insurance contract states that Ohio law will apply. Thus, under § 187(2)(b) of the *Restatement*, Ohio law will apply unless the following three factors are met: (1) if, but for the choice-of-law provision in the

32

contract, Montana law would apply under § 188 of the *Restatement*; (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties; and (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana. (Opinion, ¶ 54.) The Court easily concludes that factor (1) is satisfied in favor of Montana, and I agree with its analysis.

¶76 Under factor (2), however, the Court concludes that Montana does not have a "materially greater interest" in this dispute, and thus concludes that Ohio law will apply. I disagree with this conclusion and the Court's analysis. The Court follows *Keystone, Inc.*, and begins its analysis under factor (2) by noting that the determination of whether Montana has a materially greater interest than Ohio will depend on an analysis on the contacts described in § 188(2) of the *Restatement*. (Opinion, ¶ 59.) If an analysis under these contacts shows that Montana has a materially greater interest than Ohio's, then Montana law would presumably apply to override the contractual provision choosing Ohio law. These contacts include the following: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. In its analysis, the Court concludes that all of the factors are either neutral or of little weight; thus, Montana's interest is not materially greater than Ohio's.

¶77 While I understand the Court's strict application of the § 188(2) factors to determine whether Montana has a materially greater interest in this dispute has its genesis

33

in our decision *Keystone, Inc.*, I think we should be wary of a reflexive and rote application of those factors to determine which state has materially greater interest in the dispute before us. In the first instance, I would bring to the Court's attention that in *Keystone, Inc.,* we continued the practice of merging the "materially greater interest" inquiry with a somewhat mechanical application of the § 188(2) factors without any analysis or explanatory rationale—a practice which is inconsistent with the plain language of the *Restatement* itself, which posits the "materially greater interest" inquiry as separate and apart from the § 188(2) factors analysis. (*See* ¶ 54 of the Opinion for text of § 187(2)(b)). In *Ticknor v. Choice Hotels Intl, Inc.*, 265 F.3d 931 (9th Cir. 2001), the Ninth Circuit noted this anomaly in our application of § 187(2)(b) of the *Restatement* when it was called upon to apply *Keystone, Inc.* in analyzing a choice-of-law question under Montana law. The Ninth Circuit noted: "Montana courts conflate the latter two inquiries [under § 187(2)(b)] and find that whichever state has a materially greater interest under § 188 is also the state whose law would apply absent an effective choice of law provision." *Ticknor*, 265 F.3d at 937. In my judgment, the fact that the Ninth Circuit has recognized this anomaly in our application of § 187(2)(b) of the *Restatement* should give us pause before we perpetuate this practice further.

¶78    I would further suggest that the *Keystone, Inc.* approach of merging these two inquiries is out of step with the vast majority of jurisdictions which have analyzed the "materially greater interest" question under § 187(2)(b). In *Blalock v. Perfect Subscription Co.*, 458 F. Supp. 123 (S.D. Ala. 1978), *aff'd* 599 F.2d 743 (5th Cir. 1979),

34

for instance, an Alabama federal district court applied § 187(2)(b) of the *Restatement* to consider whether an express contractual provision to apply Pennsylvania law in an employment agreement would be enforced in Alabama. In that case, the employment agreement contained a covenant against competition which was permitted under Pennsylvania law, but expressly forbidden by statute in Alabama. *Blalock*, 458 F. Supp. at 126-27. The federal district court looked to § 187(2)(b) to resolve the question of which state's law should apply, and concluded that Alabama had a "materially greater interest" in determining the issue than Pennsylvania, even in the face of an express contractual provision to apply Pennsylvania law. *Blalock*, 458 F. Supp at 127; *see also Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC*, 307 F. Supp. 2d 1249, 1260 (M.D. Ala. 2004).

¶79    In *Barnes Group, Inc. v. C & C Prods., Inc.*, 716 F.2d 1023 (4th Cir. 1983), the Fourth Circuit reached a similar conclusion under § 187(2)(b) in considering whether to apply Ohio law to the interpretation of multi-state employment agreements which expressly called for the application of Ohio law. In that case, an Ohio-based company (Bowman, Inc.), which sold fungible parts used in the production and repair of vehicles and machinery, contracted with salesmen in a variety of states, including Alabama, Louisiana, Maryland, and South Carolina, to sell its products there. *Barnes Group, Inc.*, 716 F.2d at 1026-27. The contracts all had restrictive covenants, which were permitted under Ohio law, forbidden in Alabama, but allowed under some circumstances in Louisiana, Maryland, and South Carolina. *Barnes Group, Inc.*, 716 F.2d at 1031-32.

35

Another company subsequently hired some of Bowman, Inc.'s salesmen, and Bowman, Inc. sued the company in Ohio federal district court based on the restrictive covenants contained in the agreements. *Barnes Group, Inc.*, 716 F.2d at 1027. The Fourth Circuit was called upon to decide which state's law should apply to the dispute. The Fourth Circuit applied § 187(2)(b) of the *Restatement* to resolve this question, noting that

> A basic principle under contemporary choice-of-law doctrine is that parties cannot by contract override public policy limitations on contractual power applicable in a state with materially greater interests in the transaction than the state whose law is contractually chosen. *See Restatement (Second) of Conflicts* § 187(2)(b) (1971). While contemporary doctrine recognizes a sphere of party autonomy within which contractual choice-of-law provisions will be given effect, it also limits the extent to which deft draftsmanship will be allowed to bypass legislative judgments as to basic enforceability or validity. This is implicit in the *Restatement (Second) of Conflicts* § 187(2)(b), which provides that a contractual choice-of-law clause will not be given effect on matters such as "capacity, formalities and substantial validity," *id.* comment *d*, when application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Barnes Group, Inc.*, 716 F.2d at 1029 (footnotes and other citations omitted).

¶80    In assessing the interests of the various states involved, the Fourth Circuit noted that Maryland, Louisiana, South Carolina and Alabama all had "interests at two levels in applying their own law on the enforceability of restrictive covenants: to protect employee-residents from contractually abrogating their ability to earn a livelihood, and to control the degree of free competition in the local economy." *Barnes Group, Inc.*, 716 F.2d at 1030. The Fourth Circuit concluded that the interests of these states "in

36

regulating business relationships with the states outweigh any generalized interest Ohio might have in applying its own law to protect the interstate contracts of its domiciliary . . . ." *Barnes Group, Inc.*, 716 F.2d at 1030.

¶81     Another case I find instructive in this regard is *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990).  There, the Texas Supreme Court considered whether to apply Texas or Florida law to enforce a covenant not to compete between Wackenhut Corporation (an entity which provides security services throughout the United States) and its former employee, Edward DeSantis; Florida law permitted the enforcement of such covenants, while Texas law did not.  In that case, DeSantis resigned from Wackenhut after working there for three years, and then formed a rival company called Risk Deterrence, Inc. (RDI).  *DeSantis*, 793 S.W.2d at 675.  Wackenhut subsequently sued DeSantis under the restrictive covenant, and DeSantis sought to have Texas law govern the interpretation of the contract, in spite of the express provision to apply Florida law. *DeSantis*, 793 S.W.2d at 676-77.  The Texas Supreme Court applied § 187(2)(b) of the *Restatement* test and concluded that Texas' interest in the matter was materially greater than Florida's.  In reaching this conclusion, the Texas Supreme Court reasoned as follows:

> Texas has a materially greater interest than does Florida in determining whether the noncompetition agreement in this case is enforceable.  At stake here is whether a Texas resident can leave one Texas job to start a competing Texas business.  Thus, Texas is directly interested in DeSantis as an employee in this state, in Wackenhut as a national employer doing business in this state, in RDI as a new competitive business being formed in the state, and in consumers of the services furnished in Texas by Wackenhut and RDI and performed by DeSantis.  Texas also shares with

37

Florida a general interest in protecting the justifiable expectations of entities doing business in several states. Florida's direct interest in the enforcement of the noncompetition agreement in this case is limited to protecting a national business headquartered in that state. Although it is always problematic for one state to balance its own interests fairly against those of another state, the circumstances of this case leave little doubt, if any, that Texas has a materially greater interest than Florida in deciding whether the noncompetition agreement in this case should be enforced.

*DeSantis*, 793 S.W.2d at 679; *see also O'Brien v. Shearson Hayden Stone, Inc.*, 586 P.2d 830, 833-34 (Wash. 1978); *Stickney v. Smith*, 693 F.2d 563, 565 (5th Cir. 1982).

¶82    The comments to the *Restatement*, upon which the Court has placed some weight (Opinion, ¶¶ 60-62), do not commend the approach employed by the Court in this case, but instead exhort reviewing courts to look primarily to their own legal principles when determining whether one state has a materially greater interest than another. "The forum *will apply its own legal principles* in determining whether a given policy is a fundamental one within the meaning of the present rule *and whether the other state has a materially greater interest* than the state of the chosen law in the determination of the particular issue." *Restatement (Second) of Conflict of Laws* § 187 cmt. g (emphasis added). Thus, there is no reason to assume, as the Court does, that a mechanical application of the § 188(2) factors is contemplated by the *Restatement* itself, given that the choice-of-law rules contained in the *Restatement* "do not themselves determine the rights and liabilities of the parties, but rather guide decision as to which local law rule will be applied to determine these rights and duties." *Restatement (Second) of Conflict of Laws* § 2 cmt. a(3). While the prime objective of the § 188(2) factors analysis is to ensure that the justified expectations of the contracting parties are protected, the *Restatement* comments

38

also clearly contemplate that the various interests of the forum states are always to be balanced against these justified expectations.

> Parties entering a contract will expect at the very least, subject perhaps to rare exceptions, that the provisions of the contract will be binding upon them. Their expectations should not be disappointed by application of the local law rule of a state which would strike down the contract or a provision thereof *unless the value of protecting the expectations of the parties is substantially outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied.*

*Restatement (Second) of Conflict of Laws* § 188 cmt. b (emphasis added).

¶83    In her dissent in *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206 (Ohio 2001), Justice Resnick of the Ohio Supreme Court referred to some of these sections from the *Restatement* in making the argument that a rote application of the § 188(2) factors makes little sense in the context of UIM coverage issues. Justice Resnick concluded that an application of the *Restatement*'s choice-of-law principles in the context of UIM coverage issues should lead reviewing courts to consider "the adhesory, ambulatory, and portable nature of automobile insurance contracts and coverage. The court must also consider whether the interests of the state with the invalidating rule in having its rule applied outweigh the insurer's expectation that the contractual provision at issue will be binding upon the parties." *Ohayon*, 747 N.E.2d at 226 (Resnick, J., dissenting). I believe this is the approach that the comments to the *Restatement* actually commend, and the one that should be followed in this case.

¶84    I would also argue that the Court's analysis with respect to the "place of performance" under the § 188(2) factors, is not necessarily supported by the comments

39

themselves. The Court begins its analysis under this factor by correctly concluding that Montana is, in fact, the place of performance of Nationwide's insurance contract. (Opinion, ¶ 62.) This conclusion is consistent with our holding in *Mitchell*. The Court then observes that this contact would normally be accorded significance because "such a state 'has an obvious interest in the nature of the performance and in the party who is to perform.' " (Opinion, ¶ 62 (quoting *Restatement (Second) of Conflict of Laws* § 188 cmt. e). The Court then cautions as follows: "[t]he comments [to the *Restatement*] offer the caveat, however, that the place of performance bears little weight in choice-of-law determinations when the place of performance is uncertain or unknown at the time of contracting." (Opinion, ¶ 62, citing *Restatement (Second) of Conflict of Laws* § 188 cmt. e). Accordingly, the Court concludes that this factor is accorded little weight because "Montana's status as the place of performance was uncertain or unknown at the time of contracting." (Opinion, ¶ 62.) This leads the Court to then conclude that Montana's interest in this dispute is not materially greater than Ohio's, and that Ohio law will apply.

¶85    I have two problems with Court's analysis of this specific issue. First, based on my reading of the comments, and not just one small snippet of them, I do not believe that comments in the *Restatement*, without any other case citations, should constitute the be-all and end-all of our analysis and discussion. The comments can certainly provide courts with invaluable guidance when they are confronted with difficult questions for which no clear precedent exists. However, the comments are not authoritative; instead of

40

being the *end* of a discussion, they should be the *beginning* of one. More importantly, it is my view that the comments encourage such a discussion.

¶86 With that said, I would also submit that the Court's characterization of comment e in ¶ 62 of the Opinion is not entirely accurate. The portion of the comments referred to by the Court reads in full as follows:

> On the other hand, the place of performance *can* bear little weight in the choice of the applicable law when (1) at the time of contracting it is either uncertain or unknown, or when (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue.

*Restatement (Second) of Conflict of Laws* § 188 cmt. e (emphasis added).

¶87 I believe use of the word "can," as opposed to "will" or "must" in the comment is significant. The word "can" simply connotes that prospect that the place of performance *could be* afforded little weight in certain circumstances, but not that it necessarily will. The language of the comment leaves open the question as to whether the place of performance *should be* accorded weight, but does not definitively and authoritatively provide an answer.

¶88 Accordingly, I believe that when we undertake an analysis of the "materially greater interest" inquiry in a manner consistent with the comments, we will conclude that while the place of performance factor *can* bear little weight, in this case it bears significant weight when considered in light of our "own legal principles" as the comments to the *Restatement* commend. In Montana, UIM coverage is considered to be portable and personal, and by definition "stackable"; thus under the legal principles set

41

forth in the Montana Constitution, prohibitions on stacking violate Montana public policy. *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 45, 315 Mont. 107, ¶ 45, 67 P.3d 892, ¶ 45. The primary reason for this is because anti-stacking provisions violate the insured's reasonable consumer expectations that she has actually purchased UIM coverage which she can use. At the time of the accident, Mamie was a named insured, attending the University of Montana, and protected under the laws of this state and the Montana Constitution. Assuming that she was lawfully covered by the UIM policy, Montana's interest in protecting her reasonable consumer expectations if she was required to invoke UIM coverage in Montana was significant.

¶89 On the other hand, Ohio's interest in this matter is limited to the general need to protect the justified expectations of Nationwide. *Ohayon*, 747 N.E.2d at 212. The *Restatement* comments clearly recognize that this interest can yield. Thus, the question of whether Montana or Ohio has a "materially greater interest" in this dispute should be considered in the context of UIM coverage and in light of the policy questions invoked when states like Montana seek to prohibit the enforcement of anti-stacking provisions in UIM insurance contracts which are to be performed within its borders. This inquiry invariably requires a balancing of the interests embodied in the forum state's policy, and the interests in protecting the justified expectations of the parties. As the comments to the *Restatement* state, "[f]ulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation. *The chosen law should not be applied without regard for the interests of the state which*

42

*would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties.*" *Restatement (Second) of Conflict of Laws* § 187 cmt. g (emphasis added). In this regard, I believe Justice Resnick correctly summarized some of these interests as follows:

> Interstate travel by automobile is simply too foreseeable and too common a phenomenon to be ignored. Moreover, as evidenced by the extensive regulation in this area, an automobile insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured. Thus, when the issue presented involves the validity or enforceability of a provision that purports to limit coverage, the interest of the state where damage occurred may, along with other factors, play a more significant role in choice of law than the parties' presumed expectations . . . .

*Ohayon*, 747 N.E.2d at 223 (Resnick, J., dissenting).

¶90     Here, it must be borne in mind that the UIM coverage provision designated place of performance as anywhere within the area of coverage. The UIM coverage before us is considered portable under Montana law. Moreover, as the Court notes at ¶ 62, Nationwide even agreed that it would pay UIM damages according to "the tort law of the state where the motor vehicle accident occurred . . . ." In short, while Nationwide may not have expected the insurance contract to be interpreted according to Montana law, I would argue that at a minimum its justified expectations in this regard were not very strong. On the other hand, Mamie was living and working in Montana, paying taxes in Montana, and protected under the laws and Constitution of this state. I believe that under these circumstances Mamie deserved the protection of the laws of this State and that, consequently, Montana's interest is materially greater than Ohio's, because anti-stacking provisions are against public policy here as a matter of constitutional principle.

43

Assuming that the policy permitted Mamie to reside in Montana and still retain coverage, then Nationwide, with its national base of customers, should not automatically expect that its self-interest should trump Montana's important public policy.

¶91 Thus, I would hold that Montana has a materially greater interest than Ohio, and proceed with further analysis of Modroo's claims under Montana law. In my view, the mechanical application of the § 188(2) factors to determine whether one state has a "materially greater interest" overlooks the forest for the trees and is fundamentally at odds with the approach commended by the *Restatement*. While there will undoubtedly be areas where the laws and public policies of two states will not differ—and thus their material interests will be identical—that is not the case with respect to the issue before the Court now. By focusing only on the factors as if they were a part of a rote checklist, and not considering the policy concerns and questions which the factors are designed to explore, we misconstrue the meaning of the "materially greater interest" inquiry and arrive at a situation where Montana's interest can be trumped by foreign insurers at the stroke of a pen. I do not believe that such an approach is consistent with the *Restatement* and "our own legal principles." Therefore, I dissent.

/S/ PATRICIA COTTER

Justice James C. Nelson joins in the Dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON