FILED

November 25 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0188

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 393

RONDA TENAS,

      Plaintiff and Appellee,

v.

PROGRESSIVE PREFERRED INSURANCE COMPANY,

      Defendant and Appellant.

FILED

NOV 2 5 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 06-134
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Mark S. Williams and James D. Johnson, Williams Law Firm, Missoula, Montana

    For Appellee:

        Edward K. Duckworth, Duckworth Law Office, Ronan, Montana

Submitted on Briefs:  January 8, 2008

Decided:  November 25, 2008

Filed:

_____
          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Progressive Preferred Insurance Company (Progressive) appeals from an order of the Twentieth Judicial District, Lake County, granting Ronda Tenas's (Tenas) motion for summary judgment. We affirm in part and reverse in part.

¶2    Progressive raises the following issues on appeal:

¶3    Whether the District Court properly denied Progressive's motion to dismiss.

¶4    Whether the District Court properly applied Montana law to a Nevada insurance policy.

¶5    Whether the District Court properly granted summary judgment to Tenas.

¶6    Whether the District Court properly awarded attorney fees to Tenas.

## PROCEDURAL AND FACTUAL BACKGROUND

¶7    Tenas and her mother, Barbara Barnes (Barnes), had traveled to Montana from their home in Nevada to visit relatives in July 2003. While in Montana, Tenas was a passenger in a car driven by an uninsured motorist that crashed near Charlo, Montana, in Lake County on July 5, 2003. Tenas suffered serious injuries.

¶8    Barnes was the named insured under a Nevada Progressive policy that covered Tenas. The parties had contracted for the policy in Nevada. The policy contained a choice of law provision requiring the application of Nevada law to resolve any disputes. The policy covered two vehicles registered to Barnes in Nevada. The policy also provided uninsured motorists (UM) coverage. The policy limited UM coverage to $25,000 per person. The

2

policy contained an anti-stacking provision that prohibited the insured from recovering more than the single highest limit of UM coverage regardless of the number of vehicles upon which premiums have been paid.

¶9 Tenas received treatment at St. Patrick's Hospital in Missoula, where she accrued $34,000 in medical bills. Tenas struggled to pay her medical bills as Progressive had denied all UM benefits based upon the Montana Highway Patrol's incorrect conclusion that Tenas has been the driver of the car, and not the passenger. Tenas retained Montana counsel to conduct an independent investigation of the accident to correct Progressive's misapprehension regarding her role in the accident, and to help Tenas to obtain benefits from Progressive. Progressive finally paid Tenas $25,000, the limit for a single UM payment pursuant to the contract. Progressive sent the check to Tenas's counsel's Montana law offices. Tenas sought an additional $25,000 from Progressive. She asserted that Barnes had paid separate premiums for UM coverage for each of the two vehicles covered under the policy. Tenas argued that Montana law required Progressive to pay her the highest limit of UM coverage for each separate UM premium paid, notwithstanding the policy's anti-stacking provision. Progressive refused.

¶10 Progressive filed a declaratory judgment action in Nevada seeking a determination that the policy prohibited stacking. Tenas filed suit in District Court in Lake County almost a week later seeking a determination that Montana law required Progressive to stack payments. Tenas alleges that she was not aware of the Nevada action. Progressive filed a motion to

3

dismiss the Lake County action. Progressive argued that the District Court should abstain from jurisdiction in light of the principle of comity and Nevada's priority jurisdiction over the matter. Tenas moved for summary judgment before the District Court had determined Progressive's motion to dismiss.

¶11 The District Court denied Progressive's motion to dismiss. The court determined that choice of law principles, not jurisdictional principles, were at issue. The District Court granted Tenas's motion for summary judgment. The court noted that the policy, by its terms, required it to apply Nevada law to the dispute. The District Court acknowledged that our decision in *Youngblood v. American States Ins. Co.*, 262 Mont. 391, 395, 866 P.2d 203, 205 (1993), requires courts to enforce such clear, unambiguous contract terms, unless the terms violate Montana public policy.

¶12 The District Court determined that the policy's anti-stacking provisions, however, violate Montana public policy pursuant to our decision in *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 47, 315 Mont. 107, ¶ 47, 67 P.3d 892, ¶ 47. The court concluded that the policy entitled Tenas to receive the additional $25,000 UM coverage because "an insurance policy that contains provisions that defeat coverage for which the insurer has received valuable consideration is against public policy." *Hardy*, ¶ 47. The District Court also awarded attorney fees and costs to Tenas pursuant to Montana law as an insured forced by her insurer to assume the burden of a legal action to obtain coverage under an insurance contract pursuant to *Mountain West. v. Brewer*, 2003 MT 98, ¶ 36, 315 Mont. 231, ¶ 36, 69

4

P.3d 652, ¶ 36. Progressive appeals.

## STANDARD OF REVIEW

¶13    A district court exercises discretion in deciding whether to dismiss a complaint for declaratory judgment. *Northfield Ins. v. Ass'n of Counties*, 2000 MT 256, ¶ 8, 301 Mont. 472, ¶ 8, 10 P.3d 813, ¶ 8. We will not disturb a district court's decision that declaratory relief is not necessary or proper absent abuse of discretion. *Northfield Ins.*, ¶ 8.

¶14    We review de novo a district court's decision to grant summary judgment using the same criteria applied by the district court. *Farmer's Co-op Ass'n v. Amsden, LLC*, 2007 MT 286, ¶ 24, 339 Mont. 445, ¶ 24, 171 P.3d 690, ¶ 24. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M. R. Civ. P. 56(c). We draw all reasonable inferences in favor of the party opposing summary judgment. *Farmer's Co-op Ass'n*, ¶ 24.

¶15    A district court's grant or denial of attorney fees is a discretionary ruling that we review for an abuse of discretion. *Martin v. SAIF Corp.*, 2007 MT 234, ¶ 10, 339 Mont. 167, ¶ 10, 167 P.3d 916, ¶ 10.

## DISCUSSION

¶16    *Whether the District Court properly denied Progressive's motion to dismiss.*

¶17    Progressive argues that the District Court erred when it did not abstain from jurisdiction based on the principle of comity and Nevada's priority jurisdiction over the

5

matter. Progressive contends that the District Court should have abstained from jurisdiction in order to avoid "imping[ing] unnecessarily upon the harmonious interstate relations which are part and parcel of the spirit of co-operative federalism." *Simmons v. State*, 206 Mont. 264, 290, 670 P.2d 1372, 1385 (1983).

¶18 Progressive contends that dismissal was particularly appropriate here in light of our admonition in *Simmons* that courts should apply comity to discourage forum shopping. We determined in *Simmons* that Montana jurisdiction was inappropriate because Oregon maintained more significant connection to the cause of action. Progressive points out that we also determined Montana jurisdiction to be inappropriate in *Simmons* due to the plaintiff's desire to take advantage of a higher damage award under Montana law through forum shopping. *Simmons*, 206 Mont. at 285-86, 670 P.2d at 1383. Progressive argues that Tenas likewise engaged in forum shopping when she pursued this action in Montana, where stacking is allowed, rather than in Nevada.

¶19 Tenas argues that the District Court properly denied Progressive's motion as comity represents a discretionary principle. Tenas points out that comity is "not a rule of law, but one of practice, convenience, and expediency [that] . . . does not of its own force compel a particular course of action." *Columbia Falls Alum. Co. v. Hindin/Owne/Englke*, 224 Mont. 202, 206, 728 P.2d 1342, 1345 (1986) (internal citations and quotation marks omitted); *Simmons*, 206 Mont. at 289, 670 P.2d at 1385. Tenas also distinguishes this case from *Simmons* and *Columbia Falls Alum. Co.*, citing differences in contract language and

6

questions of whether the defendant purposely availed itself of the benefits of doing business in Montana.

¶20 Tenas contends that the existence of a provision in the Progressive policy that violates Montana public policy constitutes the most significant factual distinction. In *Hardy*, we held that "an insurance policy that contains provisions that defeat coverage for which the insurer has received valuable consideration is against public policy." *Hardy*, ¶ 47. Tenas argues that the anti-stacking provision contained in the Progressive policy represents such a provision.

¶21 We declined to relinquish jurisdiction voluntarily under the principle of comity in *Oberson v. Federated Mut. Ins. Co.*, 2005 MT 329, ¶ 10, 330 Mont. 1, ¶ 10, 126 P.3d 459, ¶ 10, when such relinquishment would have violated a firm Montana public policy. *Oberson* concerned a Michigan resident who had been injured severely while working in Montana for his Michigan employer. The injured employee won a substantial judgment in federal district court in Montana. *Oberson*, ¶ 4. The Michigan court later affirmed that the employee had been acting in the course and scope of his employment when he was injured. The workers' compensation insurer paid the employee's benefits. *Oberson*, ¶ 4. The insurer filed a subrogation claim against the worker's Montana personal injury award in a Michigan court. *Oberson*, ¶ 6.

¶22 The injured employee's representative filed a declaratory judgment action seeking a declaration that Montana law barred the insurer from recovering on a subrogation claim until the worker was made whole. *Oberson*, ¶ 6. We determined that a firm public policy exists in

7

Montana that prohibits subrogation before the injured party has been made whole. We concluded that the existence of this firm public policy justified our refusal to apply the discretionary principle of comity to relinquish jurisdiction over the subrogation issue. *Oberson*, ¶¶ 10, 16.

¶23 The rule against anti-stacking provisions in insurance policies that defeat coverage for which an insurer has received valuable consideration constitutes a similarly firm public policy under Montana law. *Hardy*, ¶ 47. Montana's firm public policy in enforcing the rule against these types of anti-stacking provisions justified the District Court's decision to retain jurisdiction over Tenas's declaratory judgment action. The District Court properly subordinated the discretionary principle of comity to the important public policy implications. *Oberson*, ¶¶ 10, 16.

¶24 Progressive also argues that the District Court should have abstained from jurisdiction in light of Progressive's previously filed Nevada action. Progressive contends that the first court to exercise concurrent jurisdiction retains jurisdiction to dispose of the entire case pursuant to the doctrine of priority jurisdiction. Progressive asserts that this Court adopted the doctrine of priority jurisdiction in *Agri West v. Koyama Farms, Inc.*, 281 Mont. 167, 933 P.2d 808 (1997).

¶25 We find unavailing Progressive's priority jurisdiction argument. The Court considered in *Agri West* whether a district court must abstain from exercising its concurrent jurisdiction when the same parties dispute the same issues in a pending tribal court action.

8

*Agri West*, 281 Mont. at 171, 933 P.2d at 810. The Court determined that "the District Court erred by sustaining jurisdiction in this action when the Crow Tribal Court had previously assumed jurisdiction over the parties and the subject matter . . . ." *Agri West*, 281 Mont. at 174, 933 P.2d at 813.

¶26 We focused our analysis and conclusion in *Agri West* narrowly. We took into consideration the special sovereign status of Indian tribes and the body of federal law surrounding tribal court jurisdiction. *Agri West*, 281 Mont. at 171-74, 933 P.2d at 810-812. We did not adopt the doctrine of priority jurisdiction as a general rule in *Agri West*. No other Montana decision adopts the doctrine. The District Court did not abuse its discretion when it denied Progressive's motion to dismiss.

¶27 *Whether the District Court properly applied Montana law to a Nevada insurance policy.*

¶28 The District Court determined that Montana law applied notwithstanding the existence of a choice of law provision in the policy requiring application of Nevada law to resolve any disputes. The court relied on *Youngblood*. *Youngblood* reiterates the established rule that we will enforce clear and unambiguous contract terms, including choice of law provisions. *Youngblood* also provides, however, that we will not enforce a clear and unambiguous contract term that violates public policy. *Youngblood*, 232 Mont. at 395, 866 P.2d at 205. The District Court applied Montana law after determining that the anti-stacking provision violated Montana public policy pursuant to *Hardy*.

9

¶29 Progressive argues that the District Court misapplied *Youngblood*. Progressive points out that *Youngblood* concerned contract terms that violate public policy. *Youngblood*, 232 Mont. at 394-95, 866 P.2d at 205. Progressive asserts that the choice of law provision does not, by itself, violate public policy. Progressive instead contends that *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, 315 Mont. 281, 68 P.3d 703, provides the appropriate analysis in a conflict of laws scenario. Progressive argues that the circumstances do not support the application of Montana law in this case pursuant to the test set out in *Mitchell*. Tenas agrees that *Mitchell* provides the appropriate test, but counters that the circumstances here required the District Court to apply Montana law.

¶30 The Court reiterated in *Mitchell* the systematic approach to resolving choice of law issues that we applied in *Phillips v. General Motors Corp.*, 2000 MT 55, ¶ 23, 298 Mont. 438, ¶ 23, 995 P.2d 1002, ¶ 23. This analysis generally follows the *Restatement (Second) Conflict of Laws*, and applies either a substantial relationships test or local laws in the absence of an agreement by the parties. *Mitchell*, ¶¶ 17-18 (citing *Restatement (Second) Conflict of Laws* §§ 6, 188, 193 (1971)). The *Mitchell Restatement* analysis has no application here, however, in light of the fact that Tenas's policy's choice of law provision constitutes an agreement by the parties.

¶31 *Casarotto v. Lombardi*, 268 Mont. 369, 886 P.2d 931 (1994) overruled on other grounds by *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652 (1996), provides this Court's most current rule regarding which jurisdiction's law should apply where

10

a contract includes a choice of law provision. *Casarotto*, 268 Mont. at 372-75, 886 P.2d at 934-35. The Court in *Casarotto* determined that the *Restatement (Second) of Conflict of Laws* § 187(2) (1971), appropriately governs such circumstances. *Casarotto* explains that § 187(2) "is consistent with our decision in *Youngblood*, and expands upon the factors to be considered" when determining whether a choice of law clause is effective. *Casarotto v. Lombardi*, 268 Mont. at 374-75, 886 P.2d at 934.

¶32   Section 187(2) provides:

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issues, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. *Restatement (Second) of Conflict of Laws* § 187(2).

¶33   Section 187(2)(a) plays no role with the choice of law provision contained in the insurance contract between Progressive and Tenas as neither party has alleged that Nevada lacks a substantial relationship to the parties or the transaction or that there is no other reasonable basis for the parties' choice. Tenas can prevail on her claim that Montana law should apply notwithstanding the parties' express contractual agreement that Nevada law should govern, therefore, only under § 187(2)(b).

11

¶34 Section 187(2)(b) requires all of the following to be true: (1) the application of the law of the chosen state would be contrary to a fundamental Montana policy; (2) Montana has a materially greater interest than the chosen state; and (3) Montana law would apply pursuant to § 188, which governs choice of law in the absence of an effective choice of law provision. *Restatement (Second) of Conflict of Laws* § 187(2)(b). *Casarotto* and § 187(2)(b) cmt. g, state that whether Montana law applies absent an effective choice of law by the parties pursuant to § 188 constitutes a threshold issue. *Casarotto*, 268 Mont. at 375, 886 P.2d at 935. Section 188 does not provide a separate substantive basis, however, for resolving a choice of law issue. Section 188 instead requires us to analyze the question pursuant to the principles stated in § 6. *Restatement (Second) of Conflict of Laws*, § 188.

¶35 Section 6 presents a two-part analysis. Section 6(1) provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Section 6(2) provides seven principles relevant to the choice of applicable law if there is no such statutory directive, and § 188(2) provides factors to aid in that consideration. *Restatement (Second) Conflict of Laws* §§ 6, 188(2).

¶36 This Court has determined that before a court can apply the factored test at § 188(2) and § 6(2), it must determine "'whether Montana law addressed the choice of law concerning [the] policy pursuant to § 6(1).'" *Wamsley v. Nodak Mut. Ins. Co.*, 2008 MT 56, ¶ 40, 341 Mont. 467, ¶ 40, 178 P.3d 102, ¶ 40 (quoting *Mitchell*, ¶ 18). Section 6(1) "'requires a court to first look to relevant state law when determining applicable law.'" *Wamsley*, ¶ 40 (quoting

12

*Mitchell*, ¶ 21). *Mitchell* and *Wamsley* both determined that § 28-3-102, MCA, controls in Montana when applying § 6(1) to an insurance contract. *Wamsley*, ¶ 40; *Mitchell*, ¶ 19.

¶37 Section 28-3-102, MCA, provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." *Wamsley* and *Mitchell* noted that "'unless the terms of the insurance contract provide otherwise . . . where an insurance contract designates the place of performance to be any state where a claim arises, performance occurs where the insured obtains judgment.'" *Wamsley*, ¶ 40 (quoting *Mitchell*, ¶ 20.) *Wamsley* and *Mitchell* concluded that "'it logically follows, that the place of performance is also the place where an insured is entitled to receive benefits, has incurred accident related expenses, or is entitled to judgment." *Wamsley*, ¶ 40 (quoting *Mitchell*, ¶ 20.)

¶38 The Court in *Mitchell* determined that Montana law should apply to an insurance policy negotiated in California and owned by California residents pursuant to § 28-3-102, MCA. *Mitchell*, ¶¶ 5-6, 19-20, 23. The insurance policy provided coverage for every state within the United States. *Mitchell*, ¶ 19. The Court determined that Montana constituted the place of performance in light of several factors: Mitchell, the insured, worked and lived in Montana at the time of the accident; the underinsured tortfeasors had insured his car in Montana; Mitchell incurred his medical expenses in Montana; Mitchell settled with the underinsured tortfeasor's insurance in Montana giving rise to the underinsured motorist claim

13

in Montana; and the judgment was rendered and paid in Montana. *Mitchell*, ¶ 22.

¶39 The Court in *Wamsley* determined pursuant to § 28-3-102, MCA, that Montana law should apply to a North Dakota insurance policy owned by North Dakota residents who were killed in a Montana car accident. *Wamsley*, ¶¶ 3, 41, 43. The insurance policy's UIM coverage did not specify a place of performance, but it also did not limit the place of performance. *Wamsley*, ¶ 43. The Court determined that Montana constituted the place of performance in light of several factors: the accident occurred in Montana; the damages arose in Montana; the insureds' estate filed the personal injury action in Montana; the tortfeasor was a Montana resident; the estate obtained a judgment in Montana; and the insurer already had paid the estate a portion of the UIM claim in Montana. *Wamsley*, ¶ 44.

¶40 Montana likewise constituted the place of performance under the contract between Progressive and Tenas pursuant to § 28-3-102, MCA. Tenas's Progressive policy did not limit the place of performance. Tenas's accident occurred in Montana. Tenas incurred her medical expenses, giving rise to damages, in Montana. The uninsured tortfeasor resided in Montana. Progressive paid the initial portion of Tenas's claim in Montana. *See Wamsley*, ¶ 44; *Mitchell*, ¶ 22. Montana law would apply pursuant to § 188, which governs choice of law in the absence of an effective choice of law. *Restatement (Second) Conflict of Laws* § 187(2)(b).

¶41 We next must determine whether Montana has a materially greater interest than Nevada, the chosen state. *Restatement (Second) Conflict of Laws* § 187(2)(b). We determine

whether Montana has a materially greater interest than the chosen state by applying the factored test at § 188(2): "'(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.'" *Keystone, Inc. v. Triad Systems Corp.*, 1998 MT 326, ¶ 10, 292 Mont. 229, ¶ 10, 971 P.2d 1240, ¶ 10 (quoting *Restatement (Second) of Conflict of Laws* § 188(2)). We evaluate these contacts according to the relative importance that they bear on the particular issue. *Restatement (Second) of Conflict of Laws* § 188(2).

¶42 The *Restatement's* comments provide instruction regarding the weight that should be accorded to each factor in determining whether Montana has a materially greater interest in an insurance policy pursuant to § 187(2)(b) and § 188(2). *Modroo v. Nationwide Mut. Fire Ins. Co.*, No. 07-0096, ¶¶ 60-62 (citing *Restatement (Second) of Conflict of Laws* § 188 cmt. e). We reasoned in *Modroo*, based upon the comments to the *Restatement*, that several of the factors listed at § 188(2) bear little significance to a state's material interest in an insurance contract, but gain importance based on their relationship to the contract issue involved and all the other contacts. *Modroo*, ¶¶ 59-61.

¶43 Application of the factors listed at § 188(2) reveals Nevada's materially greater interest. First, Nevada constitutes the place of contracting as Tenas's mother, the policy holder, purchased the Progressive policy in Nevada. Place of negotiation does not factor heavily in our analysis here because, to the extent that insurers negotiate with insureds, the

15

resulting contracts are essentially "take-it-or-leave-it" adhesion contracts. *Modroo*, ¶ 61. Place of performance likewise weighs in Nevada's favor as Tenas and her mother, the policy holder, were mere visitors to Montana. *Modroo*, ¶ 62. Montana's interest in an out of state insurance contract weakens when applied to a non-resident visitor to the state. The location of the subject matter factors little in our analysis of an insurance contract as the subject matter of an insurance contract does not constitute a specific physical thing or localized risk. *Modroo*, ¶ 60.

¶44 Finally, we address the domicil, residence, nationality, place of incorporation, and place of business of the parties, to determine whether Montana has a materially greater interest than the chosen state in an insurance contract containing a choice of law provision. *Modroo*, ¶ 59. Tenas, the insured, and her mother, the policy holder, both reside in Nevada. The record indicates that Progressive is headquartered in Florida, but Tenas's mother purchased the Progressive policy through a Nevada insurance agent. According to these factors, Nevada has a materially greater interest in the insurance contract between Tenas and Progressive than Montana.

¶45 We have determined, pursuant to *Restatement (Second) of Conflict of Laws* § 6, that a Montana statutory directive provides that Montana represented the place of performance under Tenas's insurance policy. ¶ 40. The § 188(2) analysis demonstrates, however, that Nevada has a materially greater interest than Montana in the insurance contract between Tenas and Progressive. Tenas cannot defeat the policy's choice of Nevada law to govern

16

disputes under the three part analysis in *Restatement (Second) of Conflict of Laws* § 187(2)(b). We need not address the third and remaining part of the § 187(2)(b) analysis -- whether application of Nevada law would be contrary to a fundamental Montana policy -- in light of this conclusion. *Modroo*, ¶ 63.

¶46    *Whether the District Court properly granted summary judgment to Tenas.*

¶47    The District Court improperly granted summary judgment to Tenas allowing her to stack insurance coverages under Montana law as we have determined above that the District Court improperly applied Montana law to this dispute. ¶ 45.

¶48    *Whether the District Court properly awarded attorney fees to Tenas.*

¶49    The District Court awarded attorney fees to Tenas based upon our rule in *Mountain West* that "an insured is entitled to recover attorney fees . . . when the insurer forces the insured to assume the burden of legal action to obtain the full benefit of the insurance contract. . . ." *Mountain West*, ¶ 36. The District Court improperly awarded attorney fees to Tenas in light of our determination that the District Court erroneously granted summary judgment to Tenas. ¶ 47.

¶50    We affirm in part and reverse in part.

_____
                                Justice

We Concur:


_____
        Chief Justice

17

_W. William Brockbrost_

_____

_____

_____

_____
Justices

18

Justice Jim Rice, concurring.

¶51 I concur with the Court's reversal of the judgment under the second, third and fourth issues. However, I also believe Progressive's motion to dismiss should have been granted as a matter of comity and that reversal for that reason is also warranted.

¶52 Progressive filed a declaratory judgment action in Nevada on May 30, 2006, seeking a determination of whether the policy at issue permits UM stacking. Tenas filed her complaint in Montana District Court for determination of the same issue on June 5, 2006. Not only did Progressive first file its action in a Nevada State Court, but there exists a strong Nevada connection to this case in comparison to the *de minimus* Montana connection. While comity is a "voluntary decision" to defer to the policy of another state, *Simmons*, 206 Mont. at 289, 670 P.2d at 1385, it is the conclusion that should have been rendered herein.

¶53 I believe the District Court ignored the numerous factual ties to Nevada. Not only are both Tenas and her mother, Barnes (the named insured), Nevada residents, the insurance policy was contracted for and entered into in Nevada. The vehicles covered by the policy are registered to Barnes in Nevada, were not involved in the accident spurring this litigation, and remain located in Nevada. Additionally, the insurance contract includes a choice of law provision requiring application of Nevada law. The only connection to Montana is that Tenas was injured in Montana while riding as a passenger in a vehicle driven by an uninsured motorist. In fact, the only Montanans affected by the Court's decision today are the local Montana lawyers.

19

¶54 The strong Nevada bond with this case combined with priority jurisdiction presents an appropriate situation whereby we should defer to Nevada's judgment. Failure to do so in these situations will only strain the relationship with our sister state and potentially jeopardize the rights of Montanans who may be placed in a similar situation in Nevada. The refusal to recognize comity in this case does little more than impinge on Nevada policy and disrupts the harmonious interstate relations which we should seek to preserve as necessary to the operation of cooperative federalism. *See Simmons*, 206 Mont. at 289, 670 P.2d at 1385.

_____
Justice

Chief Justice Karla M. Gray and Justice John Warner join in the concurrence of Justice Jim Rice.

_____
Chief

_____
Justice

20

Justice Patricia O. Cotter concurs.

¶55 I concur in the result reached in this case, as I believe the analysis in which the Court engages comports with that applied in *Modroo*. I write separately to reassert my concerns—expressed in my dissent in *Modroo*—that the somewhat rote approach utilized in these cases fails to take into account the important legal principles and interests that Montana might have in applying its own law to a dispute before it, notwithstanding the parties' expectations. However, as *Modroo* is now the law of the land, and the Court reaches the correct result thereunder, I concur.

/s/ Patricia Cotter<br>Justice

Justice James C. Nelson joins in the Concurrence of Justice Patricia O. Cotter.

/s/ James C. Nelson<br>Justice

21