DA 08-0186

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 52N

IN RE THE MARRIAGE OF
R.M.,

      Petitioner and Appellee,

  and

M.M.,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR 2004-669 (A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Peter F. Carroll, Attorney at Law, Kalispell, Montana

      For Appellee:

        Katherine P. Maxwell, Law Office of Katherine P. Maxwell, PLLC,
Kalispell, Montana

Submitted on Briefs:  January 28, 2009

Decided:  February 24, 2009

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 M.M. and R.M. were married in Columbia Falls, Oregon on April 25, 1990. Their marriage produced a son, T.M., born on October 3, 1990. At some point during their marriage, they relocated to Kalispell, Montana. Their marriage was dissolved in the Eleventh Judicial District Court on May 11, 2006. On March 16, 2007, M.M. filed a motion to modify the child support agreement and receive additional support for medical expenses incurred by T.M., as well as expenses for his participation in school sports. On April 9, 2007, R.M. filed a motion for attorneys fees and to hold M.M. in contempt for his failure to comply with previous orders of the District Court. On January 15, 2008, the District Court denied M.M.'s motion, and granted R.M.'s motion. M.M. now appeals the District Court's decision. For the reasons set forth below, we affirm.

¶3 On December 8, 2005, M.M. and R.M. entered into a Marital and Property Settlement Agreement and a Waiver of Hearing and Consent to Entry of Decree (Agreement), as well as a Stipulated Final Parenting Plan (Parenting Plan). The Agreement and Parenting Plan contain the following provisions which are relevant to the present appeal. First, the Agreement contained a non-modifiable provision requiring

2

M.M. to pay R.M. spousal maintenance. Second, the Agreement required M.M. to make a cash equalization payment to M.M. in the sum of $36,000.00. Finally, the Agreement contained a provision awarding attorneys fees to the prevailing party in any action to enforce its terms.

¶4 The Parenting Plan stipulated that neither party had health insurance. Under the terms of the Parenting Plan, the parent with whom T.M. was not residing was required to acquire health insurance for T.M. so long as it was cost-effective and reasonably available. However, if the parent with whom T.M. was residing had obtained health insurance and both parties agreed to share in the cost, or if the non-residing parent persuaded the District Court that the cost of an available benefit plan was not reasonable or cost-beneficial, then this condition could be waived.

¶5 T.M. was very active in sports. The Parenting Plan contained provisions related to the payment of T.M.'s mandatory costs resulting from T.M.'s participation in football, basketball, and baseball. Under the terms of the Parenting Plan, R.M. would pay 20% of the mandatory costs of these activities as well as 20% of any uninsured medical expenses, while M.M. would be responsible for the remainder. M.M. was required to provide R.M. with proof of any such payments and requirements for T.M's participation in sports.

¶6 On April 4, 2006, prior to the entry of the Decree of Dissolution, the District Court held a hearing on a motion filed by M.M. to withdraw his consent to the entry of dissolution, set aside the terms of the property settlement agreement, and request a trial date. The District Court also considered a cross-motion filed by R.M. for attorneys fees and a contested hearing date. Following a hearing, the District Court rendered a decision

3

in R.M.'s favor on April 24, 2006. In its findings of fact, the District Court noted that M.M.'s objection to the Agreement, his dislike of R.M., and his residence in Oregon, made it unlikely that he would willingly comply with the terms of the Agreement. Therefore, the District Court awarded R.M. funds held in escrow from the sale of a house they had owned in Kalispell totaling $11,405.05, in partial satisfaction of the award of maintenance and equalization payment as set forth in the Agreement. The District Court also found that M.M. received income from a trust fund, and had the capacity to work even though he chose not to do so, and that he was able to pay R.M. the sums to which she was entitled.

¶7    R.M. received the funds held in escrow from the sale of the house, and a Partial Satisfaction of Judgment was entered in the District Court on May 19, 2006. On May 22, 2006, the District Court awarded R.M. attorneys fees in the amount of $2,635.70 based on the fact that she prevailed with respect to M.M.'s motion to withdraw consent and object to the entry of decree.

¶8    After the marriage was officially dissolved, R.M. remained in Kalispell, while T.M. lived with M.M. in Sisters, Oregon. In order to participate in high school sports in Oregon, T.M. was required to have health insurance. M.M. obtained a health insurance policy for him. In May 2006, T.M. broke his leg while playing baseball. The health insurance paid a portion of these costs. After the accident, M.M. began sending R.M. copies of the remaining bills and demanded payment for them. Sometime after these events, M.M. opened a case with Montana's Child Support Enforcement Division (CSED) regarding R.M.'s alleged failure to provide health insurance for T.M. In

4

December 2006, R.M. was contacted by CSED and asked to fill out a questionnaire regarding these matters. R.M. filled out and returned the questionnaire. At the time, R.M. worked as an in-home personal care attendant and did not have access to health insurance through her employer. R.M. had been regularly paying $240.00 per month for child support payments. CSED did not require her to then provide any additional coverage as it determined that insurance was not available to her at a reasonable cost.

¶9 On March 16, 2007, M.M. filed a motion to modify the child support agreement and seeking additional support for T.M.'s medical expenses as well as expenses for his participation in school sports. On April 9, 2007, R.M. filed a cross-motion for contempt against M.M., based on his failure to comply with the District Court's previous orders on payment of spousal maintenance, the equalization payment, and the award of attorneys fees. On July 10 and 11, 2007, the District Court held a hearing on these motions.

¶10 On January 15, 2008, the District Court granted R.M.'s motion for contempt and denied all of M.M.'s motions. In its findings of fact, the District Court found that M.M. had failed to comply with its May 22, 2006 order regarding attorneys fees for $2,635.70. The District Court also found that, pursuant to the terms of the Agreement, M.M. still owed R.M. $5,405.56 in unpaid maintenance and $13,000 for the equalization payment. The District Court found that M.M. still received income from the trust fund, whose corpus was in excess of $1.5 million dollars, and that his yearly income from the trust as of December 2005 was $54,960. The District Court noted that M.M. gave no indication at the hearing that he was unable to pay any outstanding sums, and that he had the ability

5

to work although he chose not to do so. The District Court further found that it was appropriate to add post-judgment interest to all of these unpaid sums.

¶11     The District Court also made findings with respect to R.M's obligation to provide health insurance for T.M., as well as the medical and athletic support obligations between the parties. First, the District Court noted that at the time of the Parenting Plan it was stipulated that neither party had health insurance. R.M. later testified it was expected that any catastrophic medical costs would be paid for by the trust. Moreover, R.M. was working as an in-home personal care attendant and did not have access to medical insurance through her employer. From this, the District Court found that R.M. did not have health insurance and that she could not obtain it at a reasonable cost. When R.M.'s employment ended, she was unable to find similar employment and still did not have health insurance.

¶12     Further, the District Court noted that M.M. had obtained health insurance for T.M. so he could play sports in Oregon, but had failed to provide R.M. with information regarding this policy or provide her with the required bills for reimbursement of her share of the cost. Similarly, the District Court found that M.M. failed to follow the provisions of the Parenting Plan regarding R.M.'s payment of uninsured medical expenses and mandatory expenses for T.M.'s sports activities. The District Court found that while M.M. submitted letters for reimbursement of many items, most of these items were not "mandatory," and that he failed to provide proof of any requirements for T.M. to participate in various sports. While M.M. testified that he had provided such information at a settlement conference in December 2005, the District Court was not persuaded by his

testimony, observing that the receipts and requests submitted by M.M. were inadequate under the terms of the Parenting Plan. In this connection, the District Court noted that R.M. testified she had advised M.M. that she would pay her share of uninsured medical expenses and mandatory sports expenses if he provided the correct documentation. While some documents were exchanged between M.M.'s and R.M.'s attorneys, the required documentation was never ultimately provided, including the medical expenses from T.M.'s broken leg. Additionally, the District Court noted that R.M. testified that the letters which M.M. continued to send her were of a harassing nature.

¶13 From these findings, the District Court concluded that M.M. would be found in contempt of court for failing to comply with previous court orders. Accordingly, the District Court ordered M.M. to pay the previous award of attorneys fees, unpaid spousal maintenance, and equalization payment—all with post-judgment interest—within 90 days. The District Court also ordered that M.M. pay attorneys fees and costs reasonably and necessarily incurred in connection with the instant motions. Finally, the District Court concluded that health insurance was not available to R.M. at a reasonable cost, and further ordered M.M. to provide an appropriate accounting of any uninsured medical and sports-related expenses in accordance with the terms of the Parenting Plan.

¶14 M.M. now appeals this decision, arguing that the District Court erred in several respects. First, he asserts that he provided credible evidence that R.M. could have obtained health insurance at a reasonable cost, and that the finding that R.M. could not obtain health insurance at a reasonable cost was clearly erroneous. Second, M.M. asserts that the District Court's findings regarding the trust's payment of catastrophic medical

expenses were also clearly erroneous, because evidence submitted to the District Court showed that the trust is not under his control and had not previously paid medical expenses. Third, M.M. asserts that he showed that his income from the trust in 2005 was $32,000, and that this amount actually decreased over subsequent years. Fourth, M.M. argues that the evidence established that R.M. could afford to pay medical expenses based on her income of approximately $33,000.00 in 2006. Lastly, M.M. asserts that he did provide adequate documentation of the uninsured medical and athletic expenses and that the District Court's findings to the contrary are clearly erroneous.

¶15 M.M. further argues that the District Court erred when it failed to require R.M. to indemnify him against any extraordinary medical expenses incurred by T.M. M.M. argues that R.M. has an obligation under Montana law to provide insurance for T.M. and has not established a legal excuse for her failure to do so. Additionally, M.M. asserts that the District Court erred when it determined he was in contempt of court for failure to make payments in accordance with its previous orders. M.M. maintains that he reported to the District Court that he was unable to make the required payments, and that his failure to make these payments should not be a ground for finding him in contempt. Lastly, M.M. argues that the District Court's award of attorneys fees was an abuse of discretion, and that R.M. would not be considered a prevailing party if the District Court had fairly considered the evidence before it.

¶16 R.M. urges us to affirm and also seeks attorneys fees for work done on appeal.

¶17 We review a district court's findings of fact in the context of dissolution proceedings to determine if they are clearly erroneous. *In re the Marriage of Thorner*,

8

2008 MT 270, ¶ 20, 345 Mont. 194, 190 P.3d 1063. "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the record convinces us the district court made a mistake." *Thorner*, ¶ 20. In this connection, the credibility of witnesses and weight given their testimony is a determination for the district court. *Thibodeau v. Bechtold*, 2008 MT 412, ¶ 19, 347 Mont. 277, 198 P.3d 785. We will review the district court's conclusions of law for correctness. *Thorner*, ¶ 21.

¶18 A district court's grant or denial of attorney fees is a discretionary ruling which is reviewed for an abuse of discretion. *Tenas v. Progressive Preferred Ins. Co*, 2008 MT 393, ¶ 15, 347 Mont. 133, 197 P.3d 990.

¶19 On appeal, M.M. has failed to meet his burden and demonstrate that the District Court's findings of fact were clearly erroneous, or that it erred in any respect. For instance, M.M.'s claims that he provided R.M. with information about health insurance and that she could obtain it at a reasonable cost are all based on his own testimony, which the District Court considered and did not find convincing. Similarly, while M.M. asserted that the parties did not expect the trust to pay for catastrophic medical expenses, R.M. testified otherwise. Although the evidence does indicate that the trust is not under M.M.'s control, R.M. testified that the trust had paid for the medical expenses of M.M.'s mother when she was sick with cancer, and that the parties understood it would pay for other expenses when they entered into the Agreement and Parenting Plan. On appeal, M.M. has not demonstrated that the District Court's findings on this issue, in light of the evidence before it, were clearly erroneous. Additionally, the District Court's findings

that M.M. failed to provide sufficient documentation for uninsured medical and athletic support expenses were all supported by sufficient evidence and are not clearly erroneous. Because we conclude that these findings were supported by substantial evidence, we also affirm the District Court's conclusion that R.M. was not required to indemnify M.M. for health insurance costs, or provide payment for medical expenses and athletic support expenses until M.M. fully complies with the terms of the Parenting Plan and Agreement.

¶20 We also decline to disturb the District Court's decision to hold M.M. in contempt of court. We agree with R.M.'s argument that the contempt order is not reviewable on direct appeal by virtue of the "family law exception" to contempt orders under § 3-1-523, MCA, since this order did not affect the substantial rights of the parties. *See Lee v. Lee*, 2000 MT 67, ¶ 37, 299 Mont. 78, 996 P.2d 389.

¶21 With respect to the award of attorneys fees, R.M. was the prevailing party in all the proceedings before the District Court, and is thus entitled to them under the terms of the Parenting Plan.

¶22 Finally, R.M. has requested attorneys fees for work done on appeal. Because we are affirming the District Court and R.M. is the prevailing party on appeal, we grant R.M.'s request for attorneys fees. We remand this matter to the District Court for a determination of attorneys fees and costs for work done by R.M.'s attorney on appeal.

¶23 We have determined to decide this case pursuant to Section 1, Paragraph 3(d)(v) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the record before us that the District Court did

10

not err in its disposition of this matter when it denied the motions filed by M.M., and granted R.M.'s motions for contempt and attorneys fees. Therefore, we affirm.

/S/ PATRICIA COTTER

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

11