FILED

12/05/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0218

DA 23-0218

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 233

KEVIN BARBER,

Plaintiff and Appellant,

v.

BRADFORD AQUATIC GROUP, LLC,

Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-23-028(e)
Honorable Danni Coffman, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Nicholas LeTang, Passamani & LeTang, PLLC, Helena, Montana

For Appellee:

Natasha P. Jones, Elliott D. McGill, Boone Karlberg, P. C., Missoula,
Montana

Submitted on Briefs:  September 6, 2023

Decided:  December 5, 2023

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Kevin Barber (Barber) sued Bradford Aquatic Group, LLC (Bradford) for claims arising from the termination of his employment. The Eleventh Judicial District Court, Flathead County, dismissed Barber's claims without prejudice for improper venue, applying the choice-of-law and forum selection clauses contained in Barber's employment agreement. Barber appeals, arguing that Montana law should apply notwithstanding the agreement's contrary provision. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Bradford, a North Carolina limited liability corporation with its principal place of business in Brunswick County, North Carolina, engages in the sale of pools and hot tubs. Sometime in 2018, Bradford contacted Barber about the possibility of employment. In 2019, Bradford hired Barber as a Regional Business Development Manager for its Rocky Mountain region, which included Montana, Idaho, and Wyoming.

¶3 Bradford and Barber engaged in substantial negotiations leading up to Barber's employment with the company. In July 2019, the parties executed an employment agreement (the Agreement).[1] Section 8(f) of the Agreement contains a choice-of-law and forum selection clause. It provides:

> (f) <u>Governing Law and Venue</u>. Notwithstanding the principles of conflicts of laws or specific laws to the contrary, North Carolina law shall govern and control the validity, interpretation, performance, and enforcement of this Agreement and its Addendum. Any action, claim, dispute, or proceeding arising from or relating to this Agreement shall exclusively be instituted and prosecuted only in the courts located in the County of

---

[1] The parties have different views of the date they executed the Agreement. That specific date is not relevant to our decision in this case.

Brunswick, State of North Carolina, or the federal courts of the Eastern District of North Carolina, and each party submits to the jurisdiction and venue of such courts and waives any defense relating to such personal jurisdiction and venue.

During his employment, Barber resided and paid income taxes in Montana. Bradford paid payroll taxes for Barber's employment in Montana.

¶4 In January 2022, Bradford terminated Barber's employment. Barber sued Bradford alleging, among other things, that Bradford violated the Montana Wrongful Discharge from Employment Act (WDEA). Citing the Agreement, Bradford moved under M. R. Civ. P. 12(b)(3) to dismiss the suit for lack of proper venue. The District Court granted Bradford's motion. Barber appeals.

## STANDARDS OF REVIEW

¶5 When a contract contains both choice-of-law and forum selection provisions, we first determine whether the choice of law clause is valid. *Polzin v. Appleway Equip. Leasing, Inc.*, 2008 MT 300, ¶ 13, 345 Mont. 508, 191 P.3d 476. We review a district court's determination of applicable law de novo. *Harrington v. Energy West Inc.*, 2015 MT 233, ¶ 7, 380 Mont. 298, 356 P.3d 441. Whether a Montana district court is the proper venue is a question of law requiring application of facts to the applicable law. *See Deichl v. Savage*, 2009 MT 293, ¶ 6, 352 Mont. 282, 216 P.3d 749. This Court's review of a determination of proper venue is plenary. *Diest v. Thornton*, 2009 MT 21, ¶ 7, 349 Mont. 94, 201 P.3d 800.

## DISCUSSION

¶6 *1. Is the choice-of-law provision in Barber's employment agreement valid?*

3

¶7    This Court determines choice-of-law questions through the approach described in the Restatement (Second) of Conflict of Laws. *Phillips v. GMC*, 2000 MT 55, ¶¶ 5, 23, 298 Mont. 438, 995 P.2d 1002. The flexible approach of the Restatement calls for application of its principles on an issue-by-issue basis. *See Buckles v. BH Flowtest, Inc.*, 2020 MT 291, ¶ 11, 402 Mont. 154, 476 P.3d 422. Barber's claims raise only questions sounding in contract. We therefore apply the Restatement rules applicable to contract disputes.[2]

¶8    We rely on the Restatement §§ 6, 187, and 188 for determining the validity of choice of law clauses. *Polzin*, ¶ 14. When a contract includes a choice-of-law provision, we begin with the Restatement § 187 to determine the provision's validity. *Polzin*, ¶ 14 (citing *Modroo v. Nationwide Mut. Fire Ins.*, 2008 MT 275, ¶ 54, 345 Mont. 262, 191 P.3d 389). The Restatement § 187 provides:

> (1) The laws of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

---

[2] Barber's claims for wrongful discharge, breach of contract, and bad faith are contract-based claims. *See Harrington*, ¶ 17 (explaining that contract conflict-of-law rules apply to WDEA wrongful discharge claims). On appeal, Barber does not argue, and we will not address, whether tort-based conflict-of-laws principles should apply to his claims for unjust enrichment and punitive damages. *See McCulley v. Am. Land Title Co.*, 2013 MT 89, ¶ 20, 369 Mont. 433, 300 P.3d 679 (stating it is not the responsibility of this Court "to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position") (citations omitted).

(a) the chosen state had no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention the reference is to the local law of the state of the chosen law.

¶9　Considering the Restatement § 187(1), parties generally are free to determine the terms of their dealings. *See* the Restatement (Second) of the Conflict of Laws § 187 cmt. c. In Montana, parties enjoy a broad freedom to contract around the terms of their private dealings so long as their agreements do not conflict with public policy. *Winter v. State Farm Mut. Auto Ins. Co.*, 2014 MT 168, ¶ 26, 375 Mont. 351, 328 P.3d 665 (citing *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250). Through extensive negotiations, Bradford and Barber explicitly agreed to be governed by North Carolina law. Barber does not claim that he was unable to bargain for terms in the Agreement. It was within the parties' prerogative to determine that North Carolina law would govern their relationship. The particular issue raised by Barber—whether Montana or North Carolina law should apply—is resolvable by the choice-of-law clause contained in the Agreement. Under the Restatement § 187(1), North Carolina law applies to Barber's claims.

¶10　Even if Barber had a plausible argument that the issue he now raises is not one the parties could have resolved by an explicit provision in the Agreement, we follow

Restatement § 187(2) and apply the law of the state chosen by the parties unless "(1) if, but for the choice-of-law provision, Montana law would apply under § 188 of the Restatement; (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties; and (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana." *Modroo*, ¶ 54.

*a. Applicability of Montana Law*

¶11　The first prong of the *Modroo* test requires that this Court determine whether Montana law would apply under the Restatement § 188 had the parties made no valid choice-of-law election in their contract. *Modroo*, ¶ 54. In relevant part, that section provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

The relevant portion of the Restatement § 6 states, "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law."

¶12　Montana's statutory directive governing contractual choice-of-law is contained in § 28-3-102, MCA. It requires this Court to interpret a contract pursuant to the law of the place where it is to be performed or, if no such place is indicated, pursuant to the law of the place where the contract was made. *Harrington*, ¶ 18; *Polzin*, ¶ 16. In *Polzin*, we determined that a contract between a truck seller and buyer did not contain a specified place of performance. *Polzin*, ¶ 18. There, the seller argued that the place of performance of a sales contract was the place of payment, while the buyer argued that because the underlying

6

dispute regarded a warranty of a truck in Montana, Montana was the place of performance. *Polzin*, ¶¶ 17-18. Barber argues that our analysis should center on whether Montana was an anticipated place of performance under the Agreement. Barber alleges that Montana is the state with the most significant relationship to the transactions because (1) Montana was one of three states listed as Barber's territory in the Agreement, (2) Bradford was aware of Barber's activity in Montana, and (3) Bradford remitted payroll taxes to Montana and mailed paystubs to Barber's Polson address. *See* the Restatement (Second) of the Conflict of Laws § 188(1). Therefore, Barber maintains, Montana law would apply to the contract, but for the choice-of-law provision. *See Modroo,* ¶ 57. Bradford responds that, while Barber did work and reside in Montana, the Agreement did not contemplate Montana as the only place of performance. At a minimum, the Agreement contemplated performance in Montana, Idaho, and Wyoming, and it provided the possibility for performance in any county of any state. Bradford also argues that Barber's reliance on *Modroo* is misplaced because even in that case, where we found Montana was the place of performance of an automobile insurance policy covering accidents in multiple states, we chose not to apply Montana law to the contract. *See Modroo*, ¶¶ 63, 72.

¶13     Despite Barber's emphasis that Montana was an "anticipated place of performance," the Agreement does not expressly state that performance was anticipated in Montana. The Agreement provides that Barber would be paid three percent of gross sales made in a three-state region that included Montana, Wyoming, and Idaho. The plain language of the Agreement suggests only that Montana was part of Barber's work territory. Indeed, the

7

Agreement contemplates that Barber's work territory had the potential to encompass any state in the nation. Under the addendum to the Agreement, signed the same day as the Agreement, Barber's "Relevant Market" is defined as:

1. The United States; or
2. Any state in the United States in which Employer engages or has engaged in Employer's Business during the one-year period immediately preceding the termination of the Employment Agreement; or
3. Any state in the United States in which Employee has performed services (including overseeing the activities of Employer's employees or contractors) on behalf of Employer during the one (1) year period immediately preceding the termination of the Employment Agreement; or
4. Montana; or
5. Wyoming; or
6. Idaho; or
7. Any county in any state in the United States in which Employee engages or has engaged in Employer's Business during the one-year period immediately preceding the termination of the Employment Agreement; or
8. Any county in any state in the United States in which Employee has performed services (including overseeing the activities of Employer's employees or contractors) on behalf of Employer during the one (1) year period immediately preceding the termination of the Employment Agreement.

Like the contract in *Polzin*, where no place of performance was explicitly defined, the fact that Barber's territory included Montana equally with two other identified states and as one among a potentially nationwide scope of work is insufficient for us to infer that Montana was the place of performance.

¶14     Because the Agreement does not include a specific place of performance, we turn to where the contract was made. Section 28-3-102, MCA. On this point, the parties agree on the historical facts: when the Agreement was made, Barber resided in Nevada, and Bradford was incorporated and headquartered in North Carolina. Barber argues that his

intention to relocate from Nevada to Montana is sufficient to consider Montana as the place of contracting. This argument, however, is refuted by *Polzin*. In *Polzin* it was clear that Polzin intended to return to Montana after purchasing the truck in Washington. *See Polzin*, ¶¶ 4-6. We found nonetheless that Washington law applied, as it was the place of contracting. *Polzin*, ¶ 18. The same holds true here. Irrespective of Barber's intentions for the future, neither he nor Bradford was in Montana when they executed the Agreement. Barber has not established that, but for the choice-of-law clause in the Agreement, Montana law would apply.

*b. Montana's Interest in the Issue*

¶15 Choice-of-law principles require further that Montana have a materially greater interest in the issue than that of the state the parties selected. Restatement (Second) of the Conflict of Laws § 187(2)(b). To determine whether Montana's interest in an issue is materially greater than that of the parties' chosen state, we consider the contacts listed in the Restatement § 188(2). *Modroo*, ¶ 59. Those contacts are: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. The Restatement (Second) of the Conflict of Laws §§ 188(2)(a)-(e).

¶16 Barber argues that all five contacts of § 188(2) weigh in favor of applying Montana law. As to the place of contracting and the place of negotiation, Barber asserts that Nevada holds no relation to the Agreement and that because he intended to move to Montana, those

9

factors should favor application of Montana law. Because Montana was a contemplated place of performance, factor (c) supports Montana law. The Agreement's noncompete clause shows Montana was a situs of risk the Agreement meant to guard against. Finally, Barber argues that because he no longer intended to remain in Nevada and had plans to relocate to Montana, we should consider him to be domiciled in the state for purposes of the contact in factor (e). In response, Bradford asserts that because Barber was primarily in Nevada and only intended to move to Montana sometime after entering the Agreement, none of the factors support a finding that Montana law applies.

¶17 Barber has not shown that Montana's interest is materially greater than North Carolina's. The record indicates that, at the time of negotiating and ratifying the contract, Barber and Bradford were in Nevada and North Carolina respectively. Factors (a) and (b) of Restatement § 188 therefore lend minor support to the application of North Carolina law. Montana has an obvious interest in contracts that are to be performed within the borders of the state. *Modroo*, ¶ 62. But the place of performance carries reduced significance where it is not established at the time of contracting. *Modroo,* ¶ 62. As discussed above, Montana was only one of several contemplated places of performance under the Agreement. When Barber and Bradford entered the Agreement, it was equally likely that Montana, Idaho, or Wyoming would be the situs of performance. Factor (c) of § 188(2) therefore does not favor Montana. Further, where, as here, a contract implicates several states in its creation or performance, factors (a), (b), and (c) carry little or no weight in the analysis. Restatement (Second) of the Conflict of Laws § 188 cmt. e. Factor (d), the

location of the subject matter of a contract, is significant only when the contract concerns a physical thing or localized risk—the Agreement does neither. Restatement (Second) of the Conflict of Laws § 188 cmt. e.; *Modroo*, ¶ 60. Finally, the domicil and residence of the parties does not favor Montana. Bradford was incorporated and headquartered in North Carolina. Barber, at the time of contracting, was a Nevada resident, and he became a Montana resident only after he joined the company.

¶18 To the extent that Barber performed work under the Agreement in this state, Montana has an interest in the issues involved. *Modroo*, ¶ 63. Barber has not shown, however, that Montana has a materially greater interest in governing the Agreement than does North Carolina—his employer's home state and the state chosen by the parties.

¶19 The Restatement analysis under § 187 is a conjunctive test requiring a party establish that (1) but for the contractual choice of law, Montana law would apply, (2) Montana has a materially greater interest than the state chosen by the parties, and (3) applying the state law chosen by the parties would violate a fundamental Montana policy. *Tenas v. Progressive Preferred Ins. Co.*, 2008 MT 393, ¶ 34, 347 Mont. 133, 197 P.3d 990; *Modroo*, ¶ 54. Because Barber has not shown that Montana law would apply or that Montana has a materially greater interest in the issue, our analysis ends there.

¶20 The parties in this case explicitly determined that their dealings were to be governed by North Carolina law. Our analysis under the three-factor *Modroo* test and the applicable sections of the Restatement lead us to agree with the District Court that the choice-of-law provision in the Agreement is valid and that North Carolina law applies.

¶21    *2. Is the forum selection clause in Barber's employment agreement valid?*

¶22    Having determined that the choice-of-law provision in the Agreement is valid, we

consider whether the venue selection clause is enforceable under North Carolina law.

North Carolina courts "generally enforce mandatory forum selection clauses." *Lendingtree*

*v. Anderson*, 747 S.E.2d 292, 297 (N.C. Ct. App. 2013).   In 1992, the North Carolina

Supreme Court held that venue selection provisions in private contracts were

presumptively valid and could be overcome only by showing the provision was "the

product of fraud or unequal bargaining power or that enforcement of the clause would be

unfair or unreasonable." *Perkins v. CCH Computax, Inc.*, 423 S.E.2d 780, 784 (N.C. 1992)

(*superseded in part by* N.C. Gen. Stat. § 22B-3 (1993)).   Following *Perkins*, in 1993, the

North Carolina Legislature enacted N.C. Gen. Stat. § 22B-3.   The current version of that

law provides:

> Except as otherwise provided in this section, any provision in a contract
> entered into in North Carolina that requires the prosecution of any action or
> the arbitration of any dispute that arises from the contract to be instituted or
> heard in another state is against public policy and is void and
> unenforceable. This prohibition shall not apply to non-consumer loan
> transactions or to any action or arbitration of a dispute that is commenced in
> another state pursuant to a forum selection provision with the consent of all
> parties to the contract at the time that the dispute arises.

*See SED Holding, LLC v. 3 Star Props., LLC*, 784 S.E.2d 627, 631 (N.C. Ct. App. 2016).

A plain text reading of § 22B-3 leads us to conclude that the forum selection clause of the

Agreement is not affected by North Carolina statute.   The statute speaks only to a

contractual provision "that requires the prosecution of any action . . . to be instituted or

heard in *another state*."   N.C. Gen. Stat. § 22B-3 (2023) (emphasis added).   The venue

12

selection clause of the Agreement clearly contemplates prosecution of any claims between Barber and Bradford within North Carolina. Barber does not challenge the validity of the clause under North Carolina law nor does he claim that the clause was the result of duress, fraud, or undue influence, or that it is unreasonable. We agree with the District Court that the forum selection clause is valid under *Perkins* and enforceable.

## CONCLUSION

¶23 Barber and Bradford negotiated and entered into a valid employment contract. The parties' choice-of-law provision in that contract is enforceable under this Court's approach under the Restatement, and the forum selection provision is enforceable under North Carolina law. We affirm.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE